Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| MICHAEL SANTUCCI, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | |
| and HOLLY T. SHIKADA, in her | ) | |
| Official Capacity as the Attorney General | ) | |
| of the State of Hawaii | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW the Plaintiff, MICHAEL SANTUCCI, by and through his undersigned counsel, and complains of the Defendants as follows:

## I.   PARTIES

**Plaintiff**

1.     Plaintiff Michael Santucci (Santucci) is an adult male resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States.

**Defendants**

2.     Defendant City and County of Honolulu ("City") is a municipal corporation incorporated under the laws of the State of Hawaii. The City is authorized by law to control and maintain the Honolulu Police Department, an agency of the City, who acts on the City's behalf in the area of law enforcement. The County is therefore ultimately responsible for Honolulu Police Department ("HPD") and its actions, and therefore, must assume the risks incidental to the maintenance of HPD, its employees, laws, customs and policies. The County can be served by serving the Department of the Corporation Counsel, County of Honolulu.

3.     Defendant Holly T. Shikada is the Attorney General of the State of Hawaii ("State") and is sued in her official capacity and is responsible for

enforcing the State of Hawaii's customs, policies, practices and laws related to the State of Hawaii on the acquisition, possession and registration of firearms. Defendant Shikada may be served at the Office of Attorney General located at 425 Queen St, Honolulu, Hawaii 96813.

## II.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

5.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF LAW

**2ND Amendment**

6.     The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

7.     The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016).

8.     Firearms are protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570 (2008).

9.      Given the decision in *Heller*, Defendants may not impose regulations on the right to keep and carry arms that are inconsistent with the Second Amendment.  *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015).

## H.R.S. §134  Firearms

10.      Hawaii law requires the registration of all firearms.  *See* H.R.S. §134-3.

11.      Hawaii law requires that "[e]very person who acquires a firearm pursuant to section §134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition." *See* H.R.S. §134-3.

12.      Prior to acquiring a handgun, all persons must apply for a permit to acquire. *See* H.R.S. §134-2.

13.      Pursuant to Hawaii law, after applying, an applicant must wait 14 days before returning to retrieve his permit to acquire.  *See* H.R.S. §134-2.

14.      Pursuant to H.R.S. §134-7(c)(3), no one in the State of Hawaii who is or has been diagnosed as having a significant behavioral, emotional, or mental disorder as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes; shall own, possess, or control any firearm or ammunition therefor, unless the person has been medically documented to be no longer adversely

affected by the addiction, abuse, dependence, mental disease, disorder, or defect.

15.     Hawaii law, H.R.S. §134-2(c), provides "An applicant for a permit shall sign a waiver at the time of application, allowing the chief of police of the county issuing the permit access to any records that have a bearing on the mental health of the applicant.  The permit application form and the waiver form shall be prescribed by the attorney general and shall be uniform throughout the State."

16.     Hawaii law provides-

> **[§134-3.5]  Disclosure for firearm permit and registration purposes.**  A health care provider or public health authority shall disclose health information, including protected health care information, relating to an individual's mental health history, to the appropriate county chief of police in response to a request for the information from the chief of police; provided that:
>
> (1)  The information shall be used only for the purpose of evaluating the individual's fitness to acquire or own a firearm; and
>
> (2)  The individual has signed a waiver permitting release of the health information for that purpose.

17.     Hawaii law provides relief for persons who have been committed to a mental institution or for being mentally defective.

> **[§134-6.5]  Relief from federal firearms mental health prohibitor.**  (a)  Any person who is prohibited from shipping, transporting, possessing, or receiving any firearm or ammunition,

pursuant to title 18 United States Code section 922(d)(4) or (g)(4), having been adjudicated as a mental defective or having been committed to a mental institution under the laws of this State, may petition the circuit court in the circuit where the adjudication or commitment was made, in a civil proceeding, for relief from the federal firearm prohibitor based on the adjudication or commitment.  The attorney general shall represent the State; provided that the attorney general, with the prosecuting agency's consent, may designate the prosecuting attorney for the county in which the petitioner seeks relief to represent the State.

(b)  In the civil proceeding, the court shall consider:

(1)  The circumstances regarding the adjudication or commitment from which relief is sought, including the court files of the adjudication or commitment;

(2)  The petitioner's mental health and criminal history records, if any;

(3)  The petitioner's reputation in the community, developed at a minimum through character witness statements, testimony, or other character evidence; and

(4)  Changes in the petitioner's condition or circumstances since the disqualifying events relevant to the relief sought, including medical documentation that the petitioner is no longer adversely affected by the condition that resulted in the petitioner's adjudication or commitment and is not likely to act in a manner dangerous to public safety.

(c)  The court shall grant the petition for relief if the petitioner proves, by clear and convincing evidence, that the petitioner will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.  The court shall make written findings of facts and conclusions of law on the issues before it and issue a final order.

(d)  When a court issues an order granting or denying a petition for relief, the court shall forward this information to the Hawaii criminal justice data center, which in turn shall forward this information to the

6

Federal Bureau of Investigation, or its successor agency, for inclusion in the National Instant Criminal Background Check System database.  The information shall also be maintained by the Hawaii criminal justice data center for disclosure to and use by law enforcement officials for the purpose of firearms permitting or registration pursuant to chapter 134.

(e)  A person may file a petition for relief under this section no less than two years after the adjudication or commitment from which the relief is sought, and no more frequently than once every three years thereafter.

(f)  For purposes of this section, the terms "adjudicated as a mental defective", "committed to a mental institution", and "mental institution" shall be construed in accordance with title 18 United States Code section 922, title 27 Code of Federal Regulations section 478.11, and judicial interpretations of those provisions.

(g)  Any relief granted pursuant to this section shall not constitute relief from any other federal prohibitors or from any state prohibition pursuant to chapter 134.  The State, its officers, and its employees shall not be liable for any damages, attorneys' fees, or costs related to this relief process.

(h)  The petitioner may appeal a denial of relief, and the standard of review on appeal shall be de novo.

18.    Hawaii law provides that when an applicant for a permit to acquire a firearm applies, his information is submitted for a criminal history check. A criminal history check involves taking the information of an applicant and submitting it to, inter alia, the Federal Bureau of Investigation National Crime Information Center. **H.R.S. §134-2(e)** "….The issuing authority shall perform an inquiry on an applicant by using the International Justice and Public Safety Network, including the United States Immigration and

Customs Enforcement query, the National Crime Information Center, and

the National Instant Criminal Background Check System, pursuant to

section 846-2.7 before any determination to issue a permit or to deny an

application is made."

**H.R.S. §846-2.7  Criminal history record checks.**
(a)  The agencies and other entities named in subsections (b) and (c)
     may conduct state and national criminal history record checks
     on the personnel identified in subsections (b) and (c), and participate
     in the rap back program, for the purpose of determining suitability
     or fitness for a permit, license, employment, or volunteer service;
     provided that the Hawaii criminal justice data center may charge a
     reasonable fee for the criminal history record checks
     performed.  The agencies and other entities named in subsections
     (b) and (c) shall notify applicants, employees, and volunteers
     subject to a criminal history record check pursuant to this section
     that their fingerprints shall be retained by the Hawaii criminal
     justice data center and the Federal Bureau of Investigation for all
     purposes and uses authorized for fingerprint
     submissions.  Notification shall also be given to the applicants,
     employees, and volunteers subject to the rap back program.  The
     criminal history record check shall include the submission of
     fingerprints to:
     (1) The Federal Bureau of Investigation for a national criminal
         history record check; and
     (2) The Hawaii criminal justice data center for a state criminal
         history record check that shall include nonconviction data.
      Except as otherwise provided in this section, criminal history
      record information shall be used exclusively for the stated
      purpose for which it was obtained in accordance with section
      378-2.5.
     (b) Criminal history record checks may be conducted by:…

     (43) The county police departments on applicants for permits to
     acquire firearms pursuant to section 134-2 and on individuals
     registering their firearms pursuant to section 134-3;

19.    Hawaii law provides that an applicant for a permit to acquire a firearm will have his information processed through the National Crime Information Center (NCIC) and Hawaii also participates in the Interstate Identification Index (III)/National Fingerprint File (NFF).  The HPD accesses the NCIC for various purposes, including for permit to acquire firearm applications.  HPD is aware that the data in the NCIC/III/NFF is sensitive information.  see https://www.honolulupd.org/policy/policy-security-of-data-from-the-ncic-interstate-identification-index/ , HPD policy, last accessed March 10, 2022, which provides, in part,

> " To inform personnel of a documentation requirement for the National Crime Information Center (NCIC) when submitting cases to the Department of the Prosecuting Attorney, City and County of Honolulu.
>
> NCIC INTERSTATE IDENTIFICATION INDEX (III)
>
> A. All personnel who access the NCIC system should know that obtaining and disseminating data from the NCIC III file comes under close scrutiny and is subject to the Criminal Justice Information Services (CJIS) Security Policy. Custody information must be documented for all data disseminated from one authorized person to another.
>
> B. When information is obtained from the NCIC III file, the authorized person must document when the file was queried and the purpose of the query, as well as accounting for the dissemination of hard copies of the data. The CJIS Security Policy requires that, during

an audit, each user must account for any access
to the NCIC III information.

C. The NCIC III data can be obtained from the
NCIC system using an appropriate purpose code.
However, the data are highly confidential and
must be treated with great security as dictated
by the U.S. Department of Justice. Any violations
may lead to administrative and/or criminal
sanctions against the violator and/or the violator's
agency."

20.      HPD has access to the federal database NICS (National Instant

Criminal Background Check System), that includes a category labeled

"adjudicated mental health" and Hawaii already has, as of December 31,

2021, 9,555 persons listed in that category. See Exhibit A,

https://www.fbi.gov/file-repository/active-records-in-the-nics-indices-by-

state.pdf., last accessed on April 3, 2022.

### STATEMENT OF FACTS
### PLAINTIFF SANTUCCI

21.      Plaintiff Santucci is a commissioned officer, a Lieutenant Junior

Grade, in the United States Navy.

22.      In February 2021, Santucci arrived in Hawaii.

23.      Santucci was born in 1996.

24.      Santucci joined the United States navy in 2015.

25.      Santucci is unmarried.

26.     Santucci is a Cryptologic Warfare officer with a higher than Top Secret clearance for the navy.

27.     Santucci, prior to arriving in Hawaii, legally owned several firearms.

28.     As an officer in the United States navy, Santucci has recently trained with and been approved to possess and use firearms including military weapons, pistol and long gun.

29.     On or about May 24, 2021, Santucci, saw a medical provider at Tripler Army Medical Center ("TAMC").

30.     Santucci saw the medical provider at TAMC because he was feeling depressed and homesick.

31.      Santucci was not diagnosed, at TAMC, nor ever, with having a significant behavioral, emotional, or mental disorder as defined by the most current diagnostic manual of the American Psychiatric Association nor was he treated for organic brain syndromes;

32.     Santucci, on or about July 13, 2021, filled out documents provided to him by HPD to register his firearms, specifically to authorize him to possess firearms that he already lawfully owned and possessed, by submitting "permit to acquire" documentation that is substantially identical to the blank form shown in Exhibit B.

33.     Defendants/City/State and HPD have the "permit to acquire" documentation, which is the filled-out form shown in Exhibit B filled out by Santucci.

34.     Exhibit B, inter alia, includes a "Firearm Application Questionnaire" that includes the following questions:

    a) Are you or have you been under treatment or counseling for addiction to, abuse of, or dependence upon, any dangerous, harmful or detrimental drug, intoxicating compound, or intoxicating liquid, or controlled substance? [HRS §134-7(c)(1)]

        If yes, include name of treating physician_____

    b) Have you been acquitted of a crime on the grounds of mental disease, disorder, or defect? [HRS §134-7(c)(2)]

        If yes, include name of treating physician_____

    c) Have you been adjudicated as a mental defective or have been committed to any mental institution? [18 U.S.C. § 922(g)(4)]

        If yes, include name of treating physician_____

    d) Have you been diagnosed as having a behavioral, emotional, or mental disorder(s)? [HRS §134-7(c)(3)]

        If yes, include name of treating physician_____

    e) Are you or have you been under treatment for organic brain syndrome(s)?  [HRS §134-7(c)(3)]

        If yes, include name of treating physician_____

35.     Santucci has never been under treatment or counseling for

addiction to, abuse of, or dependence upon, any dangerous, harmful or

detrimental drug, intoxicating compound, or intoxicating liquid, or

controlled substance.  Santucci answered "no" to this question.

36.     Santucci has never been acquitted of a crime on the grounds of

mental disease, disorder, or defect.  Santucci answered "no" to this

question.

37.     Santucci has never been adjudicated as a mental defective or

been committed to any mental institution.  Santucci answered "no" to this

question.

38.     Santucci has never been under treatment or organic brain

syndrome.  Santucci answered "no" to this question.

39.     Santucci had been treated for depression at TAMC (Tripler Army

Medical Center) and answered "yes" adding "not serious".

40.     Santucci received from the HPD, in the documentation to register

his firearms and the "permit to acquire" his firearms, a form entitled

"Medical Information Waiver", a copy of the blank form of which is

attached as Exhibit C.  (Exhibit C includes two forms apparently used by

HPD, HPD form 89 and HPD form 89A)  This form authorizes health care

providers to deliver "any and all records which have a bearing on my

mental health" to the HPD for the purposes of determining if the applicant

is a prohibited possessor under Hawaii state law, which, although not specifically mentioned on the form, can only mean H.R.S. §134-7(c)(3).

41.     On or about July 13, 2021, HPD delivered to Santucci a letter, a copy of which is attached as Exhibit D.

42.     Exhibit D states –

> During the course of your background check, it was determined that you may have received or are currently receiving treatment or counseling for the following:
>   1. An addiction to, abuse of, or dependence upon any drug, intoxicating compound, or intoxicating liquor;
> OR
>   2. A behavior, emotional, or mental disorder as defined by the most current manual of American Psychiatric Association;
> OR
>   3. An organic brain syndrome.
>
> As such, in order to complete the processing of your application, we will require written certification from a licensed psychologist, psychiatrist, or medical doctor documenting that you are no longer adversely affected by the addiction, abuse, dependence, mental disease, disorder, or defect. No further action will be taken on your application until the required letter is received.

43.     On or about July 13, 2021, Santucci delivered his firearms to HPD because he was told he had to. Defendants/City/State and HPD have not taken any further action on Santucci's permit to acquire his firearms. HPD still holds Santucci's firearms.  Santucci has not received nor been issued a permit to acquire firearms. DoD doctors can't provide written certification.

44.     HPD did not possess, prior to Santucci's permit to acquire application, any information or material that proved that Santucci is or had been diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes.

45.     HPD did not possess, through Santucci's application for a permit to acquire, any information or material that proved that Santucci is or had been diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes.

46.     HPD did not possess, through any materials or information acquired through the disclosure of medical and mental health information that Santucci authorized the disclosure of any information or material that proved that Santucci is or had been diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes.

47.     Based upon information and belief, Santucci is not on the III/NFF/NICS list of persons "adjudicated mental health".

48.     Based on information and belief, it is the habit, custom, and policy of HPD to treat any counseling or mental health treatment, as indicated by an affirmative answer to the question of whether or not an applicant had ever received treatment or counseling, as conclusive proof that the applicant is or had been diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes.  Accordingly, based upon information and belief, it is the custom, habit and policy of HPD that once any indication of any treatment or any counseling is discovered, that the HPD then halts the application process, effectively denies the application, shifts the burden to the applicant to disprove something that does not exist and denies the applicant his right to keep and bear arms, and his firearms, even if lawfully owned already, until the applicant finds a physician who is willing to certify in writing that the applicant "no longer suffers" from the significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes.

## PERTINENT LAWS

49.    Outside of the laws that could potentially be at issue in this litigation, Santucci is not otherwise considered a prohibited possessor by Defendants' custom, habit and policy of applying the H.R.S.

50.    Plaintiff Santucci has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law;

51.    Plaintiff Santucci does not take illegal drugs or abuse alcohol;

## COUNT I

## U.S. CONST., AMEND. II

52.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein;

53.    Hawaii state law does not require Plaintiff to be medically cleared because he has not been diagnosed with a significant behavioral, emotional or mental disorder as defined by the most current diagnostic manual of the American Psychiatric Association;

54.    Thus, requiring Plaintiff to get medical clearance to own a firearm due to any or some mental health treatment or counseling that is unrelated to an actual diagnosis of a significant behavioral, emotional or mental

health disorder as defined by the most current diagnostic manual of the American Psychiatric Association is an independent City policy;

55.    Defendants' policy which requires Plaintiff to get written certification and medical clearance before he can own firearms violates the Second Amendment.

56.    Alternatively, if the City and State may properly require medical clearance pursuant to H.R.S. §134-7, then H.R.S. §134-7 is unconstitutional as applied to Plaintiff;

57.    Alternatively, if this Court finds that the City and State can properly require medical clearance without a diagnosis of having a significant behavioral, emotional, or mental disorder as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes under H.R.S. § 134-7, then that statute is unconstitutional as applied to Plaintiff.

58.    The most current diagnostic manual of the American Psychiatric Association does not categorize mental, behavioral or emotional disorders as significant or insignificant.

59. Because the statute references a non-existent circumstance, i.e. the most current diagnostic manual of the American Psychiatric Association does not define any emotional, behavioral or mental condition as "significant",

any enforcement of the State of Hawaii's customs, policies, practices and laws related to the State of Hawaii on the acquisition, possession and registration of firearms is a violation of Plaintiff's Due process rights.

60.   Therefore, there is no such thing as a diagnosis as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association.

61.   And thus, it is an impossibility for a person to have such a thing.

62.   It serves no government interest to need to be cleared of something that does not exist.

63.   Therefore, it is unconstitutional for the City and or State to require a medical clearance.

64.   Additionally, the disclosure process violates the Second Amendment because it requires the disclosure of private information as described in the section below.

65.   It thus, chills Second Amendment conduct.

## COUNT II

## Due Process

66.   The Due Process states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United

States; nor shall any State deprive any person of life, liberty, or property, without due process of law". *See* U.S. Const. amend. XIV, § 2;

67.   Under the law governing substantive due process, Plaintiff must prove that: (1) he had a valid interest at stake; and (2) defendant infringed on that interest in an arbitrary or irrational manner. *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 545 (2d Cir. 2014);

68.   Plaintiff has a valid liberty interest in his constitutional right to own a firearm;

69.   Plaintiff has a valid property interest in his ownership of his firearms.

70.   The City infringes on that right by acting in an ultra vires manner which is inherently arbitrary;

71.   The City is acting in an ultra vires manner because it requires applicants such as Plaintiff to get medical clearance that he is fit to own a firearm despite state law only requiring those that have previously received a diagnosis for a significant mental disorder as defined by the most current diagnostic manual of the American Psychiatric Association to receive medical clearance;

72.   Because the City "did not have authority for the actions it took regarding" Plaintiff's firearm rights, the City's action was "ultra vires and,

as a result, sufficiently arbitrary to amount to a substantive due process violation." *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 790 (2d Cir. 2007);

73.   Thus, the City has violated Plaintiff's Due Process rights;

## COUNT III

### Equal Protection

74.   The Equal Protection Clause of the 14th Amendment provides "nor shall any State ... deny to any person within its jurisdiction the equal protection of the laws". *See* U.S. Const. amend. XIV, § 2;

75.   The City's policy is a violation of Equal Protection because Plaintiff is being treated differently than others who have never been diagnosed with a significant mental disorder as defined by the most current diagnostic manual of the American Psychiatric Association;

76.   The City's policy is a violation of Equal Protection because Plaintiff is being treated differently than others who have never received any sort of counseling or treatment;

### Vagueness

77.   Alternatively, if this Court finds that the statute can properly require medical clearance without a diagnosis as having a significant behavioral,

emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes for a under H.R.S. § 134-7, then the statutory scheme is void for vagueness;

78.   It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. County of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298 (1972);

79.   The most current diagnostic manual of the American Psychiatric Association does not categorize mental, behavioral or emotional disorders as significant or insignificant. See Exhibit E Declaration of Dennis Petrocelli.

80.   Therefore, it is impossible to determine what mental illness prohibits a person from firearm ownership. Therefore, the H.R.S. fails to provide fair warning of what is a prohibiting mental, behavioral and emotional disorder and the H.R.S. is unconstitutionally vague both facially and as applied to Plaintiff;

## COUNT V

## (DUE PROCESS RELEASE OF PRIVATE INFORMATION)

81.   Plaintiff has a right to privacy in his personal information, which is inherent in the "Fourteenth Amendment's concept of personal liberty,"

*Whalen v. Roe*, 429 U.S. 589, 598 n.23 (1977), which protects "the individual interest in avoiding disclosure of personal matters,";

82.  Because Plaintiff has a right to privacy in his personal information, the government must show that the disclosure of that information is narrowly tailored to achieve a legitimate state interest. *Ferm v. United States Trustee (In re Crawford)*, 194 F.3d 954, 959 (9th Cir. 1999).

83.  Here, the City and State violate that right because it requires the Plaintiff and all other firearm applicants to sign a waiver that gives the City and State access to all medical information related to mental health. See Exhibit C Waiver Form.

84.  The City and State's stated interest is to see only whether Plaintiff has been diagnosed with a significant behavioral, mental or emotion disorder as defined by the defined by the most current diagnostic manual of the American Psychiatric Association or treatment for organic brain syndrome.

85.  Therefore, the required disclosure is not narrowly tailored to disclose only private information related to the information the City and State need.

86.  Therefore, the City and State's waiver is unconstitutional because it requires Plaintiff to disclose private information without cause.

87.   The policy also violates Due Process because it sends an applicant's doctor a form which discloses that they are purchasing a firearm. See Exhibit F, which is a copy of a redacted letter typically sent to doctors when an applicant seeks to get permission to exercise his second amendment rights and own a firearm.

88.   There is no government interest in telling an applicant's doctor that he is purchasing a firearm.

89.   The City could achieve its goal simply by sending a letter requesting the same information, specifically whether or not an applicant has been diagnosed with a significant behavioral, mental or emotion disorder as defined by the defined by the most current diagnostic manual of the American Psychiatric Association and a release form from an applicant without disclosing that an applicant was purchasing a firearm.

90.   Therefore, the City violates Due Process on two fronts because it discloses private information without a valid government interest.

## COUNT IV

## (DECLARATORY JUDGMENT)

91.   Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein;

92.   The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a);

93.   Absent a declaratory judgment, there is a substantial likelihood that Plaintiff will suffer irreparable injury in the future;

94.   There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;

95.   This Court possesses an independent basis for jurisdiction over the parties;

96.   Plaintiff demands a judgment declaring that Defendants' policies and or laws, which deny Plaintiff the right to own, possess and acquire firearms are unconstitutional as applied to him, and that Defendants' policies and or laws also violate his privacy rights as applied to him;

97.   Alternatively, a declaration that H.R.S. §134-7 is unconstitutional as applied to Plaintiff;

98.   A declaration and judgment that H.R.S. §134-7, and specifically (c)(3), is unconstitutional as violative of the Second Amendment;

99.     A declaration and judgment that H.R.S. §134-7, and specifically (c)(3), is unconstitutional as violative of the Fourteenth Amendment's guarantee of equal protection;

100.    A declaration and judgment that H.R.S. §134-7, and specifically (c)(3), is unconstitutional and void for vagueness;

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Defendants' policies complained about above;

2.      Plaintiff requests this Court, enjoin H.R.S. §134-7, any other relevant provision of the H.R.S. and any relevant city policy both facially and as applied to him;

3.      Declaratory relief that the complained of City and State policies are unconstitutional both facially and as applied to Plaintiff.

4.      Declaratory relief that the complained of statute, H.R.S. §134-7 and any other relevant provision of law, is unconstitutional both facially and as applied to Plaintiff.

5.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C.

§1988;

6.      Nominal Damages.

7.      Compensatory Damages

8.      Such other relief consistent with the injunction as appropriate; and

9.      Such other further relief as the Court deems just and appropriate.

Dated: April 3, 2022.

Respectfully submitted,


/s/ Alan Beck
Counsel for Plaintiff

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com


/s/ Kevin O'Grady
Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

## VERIFICATION

I, Michael Santucci, declare as follows:

1. I am the Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on March 22, 2022

MICHAEL SANTUCCI