Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| MICHAEL SANTUCCI<br>                    Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br>and HOLLY T. SHIKADA, in her<br>Official Capacity as the Attorney General<br>Of the State of Hawaii | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. _____<br>)<br>)<br>)MEMORANDUM IN SUPPORT OF<br>) MOTION FOR PRELIMINARY<br>) INJUNCTION<br>)<br>) Judge: N/A<br>) Trial: N/A<br>) Hearing: N/A<br>)<br>) |

# **Table of Contents**

Introduction ................................................................................................................1

Plaintiff is Likely to Succeed on the Merits……………………………………..3

Requiring Plaintiff to receive medical clearance violates the Second Amendment....

Violates the Second Amendment.....................................................................6

Strict Scrutiny Should Apply to Plaintiff's Claims………………………….9

Under Intermediate Scrutiny the Ban Fails.............................................11

City's Policy requiring medical clearance Violates Due Process Because it is Ultra

Vires ...........................................................................................................12

The City's Policy Violates Equal Protection ..........................................14

The City's Forced disclosures are unconstitutional………………………15

The Disclosure requirements violate the Second Amendment………………21

Vagueness/Fair Notice ................................................................................23

Plaintiffs Will Suffer Irreparable Harm ...................................................24

Waiver of bond……..…………………………………………………….26

Consolidation……………………………………………………………...27

Conclusion .................................................................................................27

# CASES

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) .3

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)……………………………………………………………………………..2

*Bellotti v. Baird*, 443 U.S. 622, 655 (1979)…………………………………………22

*Binderup v. Att'y Gen,* 836 F.3d 336 (2016)…………………………………………...11

*Carey v. Population Servs. Int.'l*, 431 U.S. 678, 684 (1977)……………………...16

*Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778, 779 (2d Cir. 2007)………13, 14

*District of Columbia v. Heller,* 554 U.S. 570……………………………..2, 7, 8, 14

*Doe v. Attorney General*, 941 F.2d 780, 796 (9th Cir. 1991)..……………………18

*Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994)………………………17

*Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020)……………………………27

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)………….25

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018)………………………………………………………………………………26

*Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)…………………………….27

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)………………………………………...24

*Ezell v. City of Chicago*, 651 F.3d 684 (2011)…………………………………….24

*Ferm v. United States Trustee (In re Crawford)*, 194 F.3d 954, 958 (9th Cir. 1999);. …………………………………………………………………………….17

*Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *40, 2012 WL.

*Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, 1144 (D. Haw. 2014)…………………………………………………………………………..12

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)…………………………23

*Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014)..7, …………………………………………………………………………………10

*Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)…….……………..26

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009)…………………..25

*Lamont v. Postmaster General*, 381 U.S. 301 (1965)………………………16, 21

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)……………………………24

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)……………………………..24

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997)………………..24

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958)………………16, 21

*NASA v. Nelson*, 562 U.S. 134 (2011)…………………………………………17

*Nixon v. Adm'r of General Servs.*, 433 U.S. 425, (1977)………………………16

*Orff v. City of Imperial*, No. 17-cv-0116-W, 2017 WL 556983, (S.D. Cal. Nov. 17, 2017)…………………………………………………………………………19

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012)……………………..15

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985)…………………………………………...27

*Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992)……………...…16

*Planned Parenthood of Southern Arizona v. Lawall*, 307 F.3d 783 (9th Cir. 2002)……………………………………………………………………………18

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005)……………………………..25

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)..……………………………26

*Roe v. Sherry*, 91 F.3d 1270 (9th Cir. 1996)…………………………………...20

*Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 545 (2d Cir. 2014)…………………………………………………………..13

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002)…………………………14, 15
*Stokes v. United States DOJ*, No. C 19-04613 WHA, 2021 U.S. Dist. LEXIS 142785, (N.D. Cal. July 30, 2021)………………………………………………9

*Talley v. California*, 362 U.S. 60 (1960)……………………………………..16, 21

*Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707 (1981).10, 15

*Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S. 747 (1965)……………………………………………………………………..16, 21, 22

*Tyler v. Hillsdale Cnty. Sheriff's Dep't,* 837 F.3d 678 (6th Cir. 2016)………..11, 12

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013)……………………7, 8, 11

*United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749 (1989)……………………………………………………………………16

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013)……………………..26

*Varo v. Los Angeles Cty. Dist. Atty's Office*, 473 F. Supp. 3d 1066 (C.D. Cal. 2019)……………………………………………………………………………17

*Walls v. Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990)………………………….17

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130 (C.D. Cal. 2109)……………26

*Whalen v. Roe*, 429 U.S. 589 (1977)……………………………...15, 16, 17, 19, 20

*Winter v. Nat. Res. Def. Council, Inc*., 55 U.S. 7 (2008)…………………………..2

*Yukutake v. Conners*, No. 19-00578 JMS-RT, 2021 U.S. Dist. LEXIS 153586, at *15 (D. Haw. Aug. 16, 2021)……………………………………………………12

## STATUTES

H.R.S. 134-2……………………………………………………………………….4

H.R.S. 134-7…………………………………………………………..3, 4, 5, 23, 24

U.S.C. 922(g)(1)…………………………………………………………………11

U.S.C. 922(g)(4)……………………………………………………………………8

## <u>RULES</u>

Rule 65(a)(2)…………………………………………………………………………27

Rule 65 (c)………………………………………………………………………..26

## <u>OTHER AUTHORITIES</u>

Red Flag Laws: How Law Enforcement's Controversial New Tool to Reduce Mass

Shootings Fits Within Current Second Amendment Jurisprudence, 61 B.C.L. Rev.

1491 (April 2020)……………………………………………………………………2

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed.

1995)…………………………………………………………………………………24

## **Introduction**

Plaintiff is a City and County of Honolulu ("City") resident, who the City, through its own policy and/or its application of State law, will not allow to own firearms without medical clearance due to treatment for mental health. Plaintiff's claim is that this is unconstitutional on Second Amendment, Due Process and Equal Protection grounds. The City's policy and/or application of state law is additionally unconstitutional because it requires the disclosure of private information. In the alternative, the statute itself is unconstitutionally vague. Plaintiff faces deprivation of his constitutional rights and is entitled to an immediate injunction to enjoin the City from its unconstitutional conduct and the enforcement of the statute itself.

The City's requirement that Plaintiff produce a mental health medical clearance before he can own/register a firearm violates the Second Amendment because it impermissibly shifts the City's burden of establishing mental incompetency to the applicant to disprove mental incompetency. As a practical matter, the City makes the applicant disprove a negative – I am not incompetent – which is expensive and burdensome especially considering that virtually all Hawaii doctors refuse to write the waivers the City requires as proof of mental competency.  Additionally, governmental physicians, such as Department of Defense personnel, are forbidden to write such a statement.  See Complaint ¶ ¶43.

Finally, the statute itself makes an impossible circumstance a prohibiting marker yet, because the statute is undefined, captures and prohibits all manner of persons, including Plaintiff.

Although *Heller* in dicta stated that mental incompetency may, presumptively, be a reason to ban gun ownership, *Heller* firmly placed the burden on the state to establish incompetency in the first instance. Moreover, federal and state statutes banning gun ownership on this basis have set incredibly high objective standards – proof of commitment along with its concomitant notice and due process procedures.

The City's policy, and the statute itself, should be directed at individuals who it reasonably believes pose a danger to themselves or others rather than those who simply have received some mental health treatment.   See e.g., NOTE_ _RED FLAG_ LAWS_ HOW LAW ENFORCEMENT_S CONTROVERS, 61 B.C. L. Rev. 1491 .

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in favor of injunction; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 55 U.S. 7, 20 (2008)). Alternatively, an "injunction is appropriate

when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

<u>**Plaintiff Is Likely to Succeed on the Merits**</u>

**Plaintiff Is Not Precluded from Firearm Ownership Under H.R.S. 134-7.**

Plaintiff Santucci has received counseling for feelings of homesickness since being stationed in Hawaii *See* Complaint ¶ ¶ 30.  The City argues pursuant to this counseling, Plaintiff is barred from receiving a firearm permit pursuant to H.R.S. § 134-7(c)(3) until he has been cleared by a doctor as being no longer adversely affected by a significant behavioral, emotional, or mental disorder as defined by the most current diagnostic manual of the American Psychiatric Association nor was he treated for organic brain syndromes . *See* Complaint ¶ ¶ 14; It reads as follows:

> (3)  Is or has been diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes;
>
> shall own, possess, or control any firearm or ammunition therefor, unless the person has been medically documented to be no longer adversely affected by the addiction, abuse, dependence, mental disease, disorder, or defect.
>
> +

However, there is no evidence that Plaintiff has ever been diagnosed with a significant behavioral, emotional, or mental disorders as defined in the D.S.M. Rather, plaintiff has been told he is fit to carry a firearm in performance of military duties; in fact Plaintiff has qualified, recently, on several different firearms including pistols and long guns.  See ¶ ¶ 28.  Contrary to what the statute requires, the City shifts the burden onto the Plaintiff to prove that he is qualified to own firearms when he has never been diagnosed with a disqualifying mental condition.

Therefore, the City is prohibiting Plaintiff due to an independent municipal policy. In the event this Court disagrees with this analysis, then H.R.S. § 134-7(c)(3) is unconstitutional as applied to Plaintiff. Additionally, the City's mental health process unconstitutionally requires the disclosure of private personal information.

Pursuant to H.R.S. §134-2, in order to apply for a permit to acquire a firearm,

> (c)  An applicant for a permit shall sign a waiver at the time of application, allowing the chief of police of the county issuing the permit access to any records that have a bearing on the mental health of the applicant.  The permit application form and the waiver form shall be prescribed by the attorney general and shall be uniform throughout the State.

The City applies this statute by requiring applicants to sign one waiver that appears to be of their own making contrary to state law, that "authorize[s] the

Chief of Police in the City and County of Honolulu access to any and all records which have a bearing on my mental health for the strict purpose of determining my qualification to acquire, own, possess, or have under my control, a firearm". See Complaint Exhibit C  which HPD labels (HPD-89 (R-05/13).  And another that authorizes the State to release to the City similar files. See Complaint Exhibit C which is labeled (HPD-89A, R-02/14     AG.Firearms.Waiver.Honolulu 9/2013). Applicants are also required to file another questionnaire that asks them about their mental health, yet this form, unlabeled, seeks personal information far broader than what qualifies as a disqualifying mental condition under H.R.S. 134-7(c)(3) .  See Complaint Exhibit B.  Finally, the applicant's doctors are sent a letter which requests similar information and importantly they are told that the applicant has applied to purchase a firearm.   See Complaint Exhibit F.

Therefore, the City's policy and/or application of Hawaii law requires the disclosure of private medical information to the City.  And beyond the scope of what is needed to determine whether a person is fit to own a firearm.  The stated rationale for this disclosure is to see if a person has been diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes.   However, the City requires access to all mental health files even those that are not relevant to making this determination and which

do not make this determination.  That is, all the City needs is a document from a doctor that answers the question of whether or not suffers from a disqualifying mental condition, as defined in the H.R.S., and nothing more.  A person's marriage counseling records or private bereavement records has no bearing on this and yet are accessible to the police.  A narrower disclosure that gave an applicant's doctor the right to release whether the applicant has been "diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association" would achieve the same purpose without releasing as much private information. This, as shown below, is unconstitutional.

Furthermore, the disclosure to the applicant's doctor that he is purchasing a firearm is an unconstitutional forced disclosure of private information to a third party. There is no need to inform an applicant's doctor that an applicant is purchasing a firearm to request the desired information.  Therefore, as shown below, the City's firearms purchase process also violates Plaintiff's right to privacy by requiring him to release private information without justification.

<u>**Requiring Plaintiff to Receive Medical Clearance**</u>

<u>**Violates the Second Amendment**</u>

The City's requirement that Plaintiff receive medical clearance before he can own a firearm, that he already lawfully possessed, violates the Second

Amendment. The Ninth Circuit "along with the majority of our sister circuits, has adopted a two-step inquiry in deciding Second Amendment cases: first, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny." *See Silvester v. Harris*, 843 F.3d 816, 820-821 (9th Cir. 2016). "In the first step, we ask 'whether the challenged law burdens conduct protected by the Second Amendment,' [*United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)], based on a 'historical understanding of the scope of the [Second Amendment] right,' *Heller*, 554 U.S. at 625, or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected,'" *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).  If the challenge survives the first step, the next step is to determine the appropriate level of scrutiny.  "In ascertaining the proper level of scrutiny, the court must consider: (1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Id*. at 960-61.

"The result is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self-defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Id*. at 961.  That is the essence of the holding in *District of Columbia v. Heller*, 554

U.S. 570, 628-629 (2008). A law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny. *See Chovan*, 735 F.3d at 1138. Otherwise, intermediate scrutiny is appropriate. "[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, the court may apply intermediate scrutiny." *Silvester*, 843 F.3d at 821.  "[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Mai v. United States*, 952 F.3d 1106, 1115 (9th Cir. 2020)

It is true that, in this circuit, "a person who required formal intervention and involuntary commitment by the State because of the person's dangerousness is not a "law-abiding, responsible citizen." Thus, in this circuit, for now, Section 922(g)(4)'s prohibition thus falls well outside the core of the Second Amendment right. *Id. Mai v. United States*, 952 F.3d 1106, 1115 (9th Cir. 2020). Plaintiff has never been committed and only received some counseling as do many if not most people throughout the course of their lives. See Complaint ¶ ¶ 30, 36, 37, 39.  The Northern District of California recently made a very good analysis of *Mai* in *Stokes v. United States DOJ*, No. C 19-04613 WHA, 2021 U.S. Dist. LEXIS 142785, (N.D. Cal. July 30, 2021). In finding a litigant was not disqualified from owning a firearm the Court found the State's "certification does not establish that our plaintiff was found to be both mentally ill and dangerous, as required by

*Mai*". *Id* at *28. "Therefore, defendants were wrong to deny Stokes a firearm permit on account of the Section 5250 certification." *Id.* Plaintiff is similarly not governed by *Mai* and is squarely within the class of law-abiding citizens' who receive full Second Amendment protection.

Requiring medical clearance also violates the Second Amendment because the most current diagnostic manual of the American Psychiatric Association does not categorize mental, behavioral or emotional disorders as significant or insignificant. See Exhibit E, Declaration of Dennis Petrocelli . And thus, it is an impossibility for a person to have such a thing. It serves no government interest to need to be cleared of something that does not exist.  Because it is impossible to declare that a person "is <u>no longer</u> adversely affected" by a thing that doesn't exist in the first place, forcing Plaintiff to find a doctor who will certify in writing such a thing is nearly impossible and thus only serves to prohibit and dissuade people from attempting to exercise their second amendment rights, that is it chills their second amendment rights.

<u>**Strict Scrutiny Should Apply to Plaintiff's Claims**</u>

In this matter, the ban at issue does not "leave open alternative channels for self-defense" and strikes at the core right to own a firearm for self-defense. *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014). Strict scrutiny should apply, and the City must demonstrate a compelling government interest to

permanently deprive a person of their Second Amendment right for a mental, emotional or behavioral condition that is not significant as defined by the must current diagnostic manual of the American Psychiatric Association and demonstrate how that is narrowly tailored to achieve that interest. *See Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest."). This Court should apply strict scrutiny and find that there is no compelling government interest in shifting the burden to Plaintiff to find a doctor to prove he is qualified to own firearms. There is also no government interest in making Plaintiff be cleared of a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association because such a thing does not exist.  It serves no government interest to be cleared of something that does not exist.  This policy also is not narrowly tailored compared to, for instance, the extraordinarily high standard of prior commitment that has, at a minimum, notice and a judicial proceeding where the person can be heard.

However, even if intermediate scrutiny applies, this Court should still rule in Plaintiff's favor.

## <u>Under Intermediate Scrutiny the Restriction Fails</u>

Even if this Court finds intermediate scrutiny is appropriate in the instant case, the City's conduct, and the statute, cannot stand. Our intermediate scrutiny test under the Second Amendment requires that (1) the government's stated objective . . . be significant, substantial, or important; and (2) there . . . be a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester v. Harris*, 843 F.3d 816, 821-22 (9th Cir. 2016) (quoting *Chovan*, 735 F.3d at 1139). The City simply has not and cannot present evidence that the City's policy and/or application of State law fulfills this test. In any event, many courts have struck similar or less restrictive laws based on intermediate scrutiny.

In *Binderup v. Att'y Gen*, the Third Circuit sitting *en banc* applied intermediate scrutiny in finding 18 U.S.C. § 922(g)(1) unconstitutional as applied to the litigants. 836 F.3d 336 (3d Cir. 2016) (en banc). In *Tyler v. Hillsdale Cnty. Sheriff's Dep't,* the Sixth Circuit sitting *en banc* ruled that a person who "has been adjudicated intellectually disabled" or "has been committed to a mental institution" is not permanently barred from possessing firearms, 837 F.3d 678 (6th Cir. 2016) (en banc). Judge Julia Gibbons wrote that under intermediate scrutiny, the burden of justification is demanding and it rests entirely on the State and "in discharging this burden, the government can rely on a wide range of sources, including legislative history, empirical evidence, case law, and even common sense, but it

may not 'rely upon mere anecdote and supposition'" (*Tyler*, No. 13-1876, slip op. at 20). In *Tyler*, according to Judge Gibbons, the government had not presented sufficient evidence of the continued risk presented by persons who were previously committed (*Id.* at 24). Thus, the statute, as applied, given the evidence supplied, failed intermediate scrutiny.

Plaintiff's challenge, in this matter, is analogous. Shifting the burden to an applicant to show he is mentally fit "is neither 'substantially related' nor 'narrowly tailored' to such interests." *Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, 1144 (D. Haw. 2014). As Judge Seabright recently stated in striking two of Hawaii's registration laws, "[i]t is the government's burden to prove that both prongs of the test are satisfied." *Yukutake v. Conners*, No. 19-00578 JMS-RT, 2021 U.S. Dist. LEXIS 153586, at *15 (D. Haw. Aug. 16, 2021).

### The City's Medical Clearance Requirement

### Violates Due Process Because it is Ultra Vires

As established above, the City's interpretation of Hawaii law is ultra vires. This is a violation of due process. Under the law governing substantive due process, Plaintiff must prove that: (1) he had a valid interest at stake; and (2) defendant infringed on that interest in an arbitrary or irrational manner. *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 545 (2d Cir. 2014).  Plaintiff has a fundamental right to own firearms which is being

infringed by the City misapplying and applying state law. This is analogous to the

Second Circuit's jurisprudence. As shown below, this Court should adopt the

Second Circuit's reasoning and apply it to this matter. In this case, a due process

violation exists because Defendants acted in an ultra vires manner which is

inherently arbitrary. In *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778, 779 (2d

Cir. 2007) the Second Circuit found ultra vires conduct violates due process. "[I]f

the Town Board did not have authority for the actions it took regarding Fun

Quest's permit—as it appears it did not—the Board's actions were ultra vires and,

as a result, sufficiently arbitrary to amount to a substantive due process violation."

*Id.* at 790.

Similarly, Plaintiff has had his Due Process rights violated by the City's

ultra vires conduct.  The City does not have authority to require medical clearance

from Plaintiff because there is no evidence that he has been diagnosed with a

disqualifying mental health condition.  Therefore, the City's "actions were ultra

vires and, as a result, sufficiently arbitrary to amount to a substantive due process

violation." *Id*. 790. In *Cine SK8,* the litigants were able to invoke Due Process

because they were able to establish a protected property interest. Here, Plaintiff

may invoke Due Process because he has a protected liberty interest in his right to

own a firearm for purposes of lawful self-defense as well as a protected property

interest in the firearms that he already owns. As in *Cine SK,* the City's ultra vires

conduct is inherently arbitrary and the decision to deny Plaintiff's permit was made through a process tainted with fundamental irregularities. The City does not have the right to deny Plaintiff's permit to acquire without evidence of a disqualifying mental health condition. Plaintiff has a protected liberty and property interest at stake in his ability to own firearms, including his own previously owned and possessed firearms. The City's conduct is ultra vires and thus violates Due Process.

## The City's Policy Violates Equal Protection

The City's policy is a violation of Equal Protection because Plaintiff is being treated differently than others who have never been convicted of a disqualifying mental illness; *Silveira v. Lockyer*, 312 F.3d 1052, 1087-88 (9th Cir. 2002) abrogated on other grounds by *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008). According to *Heller*, Plaintiff has a fundamental right to own a firearm for self-defense. Thus, strict scrutiny applies. "Therefore, the University's differential treatment of plaintiffs will draw strict scrutiny (as opposed to rational basis review) under the Equal Protection Clause only if it impinged plaintiffs' First Amendment rights." *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012).

The City must demonstrate a compelling government interest in order to require medical clearance. The City must also show how that is narrowly tailored to achieve that interest. *See Thomas v. Review Bd. of Ind.do Employment Sec. Div.*,

14

450 U.S. 707, 718 (1981).  There is no compelling government interest for the City

to treat Plaintiff differently than other citizens and doing so is not narrowly

tailored.  Thus, the City's conduct violates the Equal Protection Clause.

Even if this Court were to find that rational basis scrutiny applies, requiring

only some individuals to be medically cleared who have never been diagnosed

with a disqualifying mental health disorder "is wholly unconnected to any

legitimate state interest". A statutory exemption that bears no logical relationship

to a valid state interest fails constitutional scrutiny". *Silveira v. Lockyer*, 312 F.3d

1052, 1091 (9th Cir. 2002). In this matter, the City's conduct, and the statute, is

similarly irrational, and, thus, fails rational basis review.

### The City's Forced Disclosure Requirements Are Unconstitutional

The City's disclosure requirements violate two constitutional principles. The

first is found "in the Fourteenth Amendment's concept of personal liberty,"

*Whalen v. Roe*, 429 U.S. 589, 598 n.23 (1977), which protects "the individual

interest in avoiding disclosure of personal matters," *id.* at 599; *see also Nixon v.

Adm'r of General Servs.*, 433 U.S. 425, 457 (1977) (reaffirming right to privacy in

personal information). The second protects against governmental efforts that chill

"the exercise of constitutional rights by requiring disclosure of protected, but

sometimes unpopular, activities." *Thornburgh v. American College of

Obstetricians and Gynecologists*, 476 U.S. 747, 767 (1965), *overruled in part on*

*other grounds by Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992);

*see also Lamont v. Postmaster General*, 381 U.S. 301, 306–07 (1965) (invalidating

USPS requirement that addressee affirmatively request delivery of "communist"

materials in order to receive them); *Talley v. California*, 362 U.S. 60, 64–65 (1960)

(municipal ban on unsigned handbills); *NAACP v. Alabama ex rel. Patterson*, 357

U.S. 449, 462–65 (1958) (compelled disclosure of NAACP membership list).

The Fourteenth Amendment protects "a right of personal privacy," *Carey v.*

*Population Servs. Int.'l*, 431 U.S. 678, 684 (1977), which includes a "privacy

interest in keeping personal facts away from the public eye," *United States Dep't*

*of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 769 (1989);

*see Whalen,* 429 U.S. at 599 n.25 (recognizing "the individual interest in avoiding

disclosure of personal matters"). Indeed, the Supreme Court has expressly

acknowledged the acute "threat to privacy implicit in the accumulation of vast

amounts of personal information in computerized data banks or other massive

government files." *Whalen,* 429 U.S. at 605; *see also NASA v. Nelson*, 562 U.S.

134, 155 (2011).

The Ninth Circuit interprets *Whalen* and its progeny as recognizing a right to

informational privacy in confidential personal information. *Ferm v. United States*

*Trustee (In re Crawford)*, 194 F.3d 954, 958 (9th Cir. 1999); see also *Varo v. Los*

*Angeles Cty. Dist. Atty's Office*, 473 F. Supp. 3d 1066, 1073 (C.D. Cal. 2019)

(holding that the right to informational privacy includes confidential information and rejecting contention that such right is limited to medical information). Other circuits have characterized the right as one "to 'confidentiality,' to distinguish it from the right to autonomy and independence in decision-making for personal matters also recognized in *Whalen*." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994), cited with approval in Crawford, 194 F.3d at 958. The first step in such cases is to determine whether the individual has a protected informational privacy interest. *See Crawford*, 194 F.3d at 958; see also *Walls v. Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990) (in determining whether information is entitled to privacy protection, the court must first consider whether there is a "reasonable expectation[ ] of confidentiality"). In this circuit, "the right to informational privacy applies both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such information will not be made public." *Planned Parenthood of Southern Arizona v. Lawall*, 307 F.3d 783, 789–90 (9th Cir. 2002).

"The right to informational privacy, however, 'is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest.'" *Crawford*, 194 F.3d at 959 (quoting *Doe v. Attorney General*, 941 F.2d 780, 796 (9th Cir. 1991)). As such, courts in the Ninth Circuit "engage in the delicate task of weighing competing interests to determine whether the government

may properly disclose private information." *Id.* (internal quotations omitted).

Relevant factors to be considered include:

> [T]he type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Doe v. Attorney General*, 941 F.2d at 796. That list is not exhaustive, and the relevant considerations necessarily vary from case to case. *Crawford*, 194 F.3d at 959. In each case, however, the state must establish "that its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest." *Id.* (internal quotations omitted). In most cases, "it will be the overall context, rather than the particular item of information, that will dictate the tipping of the scales." *Id.*

Here, Plaintiff's personal information consists of all his medical information that relates to mental health as applied to their disclosure to the City. See Exhibit C.  And separately, he challenges the release of the fact he is purchasing of a firearm to his doctor. *See* Exhibit F.

Because Plaintiff has a right to privacy in his personal information, the government must show that the disclosure of that information is narrowly tailored to achieve a legitimate state interest. *Crawford,* 194 F.3d at 959. The government

cannot meet its burden. The City's rationale for requiring disclosure is to see whether or not a person has been diagnosed for a significant mental illness. The disclosure is not tailored to that interest because it requires the applicant's doctor to disclose all mental health treatment including treatment unrelated to significant mental illness.

As the District Court for the Southern District of California has recognized, in cases upholding laws that compelled the collection or disclosure of private information, courts have emphasized that the validity of the law turns upon whether there are sufficient protections against unwarranted disclosure and whether the scope of the disclosure is appropriately tailored. *See Orff v. City of Imperial*, No. 17-cv-0116-W, 2017 WL 556983, at *4–*6 (S.D. Cal. Nov. 17, 2017) (Whelan, J.) (analyzing privacy cases). In *Whalen,* for example, the Supreme Court upheld a New York law compelling prescription forms for certain controlled medications, including identifying information, to be reported to the state reasoning that the "statutory scheme, and its implementing procedures, evidence[d] a proper concern with, and protection of, the individual's interest in privacy." *Whalen*, 429 U.S. at 605. In so holding, the Court emphasized that "[p]ublic disclosure of the identity of patients [was] expressly prohibited by the statute and by a Department of Health Regulation." *Id.* at 594. In Crawford, although the Ninth Circuit recognized the right of a bankruptcy petition preparer to

informational privacy in his social security number—"especially when accompanied by names and addresses"—the court ultimately decided that the plaintiff's concern about identity theft was outweighed by the underlying legislative policy to prevent "widespread fraud and unauthorized practice of law." *Crawford*, 194 F.3d at 959–60. In *Roe v. Sherry*, 91 F.3d 1270 (9th Cir. 1996), the court held that the plaintiff's privacy interest in his confidential HIV test results was overcome by the Navy's interest in "collecting evidence of a serious crime" involving HIV transmission. Id. at 1274. Additionally, the court emphasized that the Navy "made only a limited disclosure of [the plaintiff's] HIV status" to individuals with a "specific need to know." Id.

Unlike the above cases, the information the City needs is far less than the information it requires Plaintiff to disclose.  And in the case of informing Plaintiff's doctors about his desired firearm ownership, that serves no government interest at all. The City could simply send a request for an applicant's medical information, specifically requesting whether or not the applicant meets the statutory definition, that is, a significant emotional, behavioral or mental disorder as defined by the most current diagnostic manual, along with his waiver without disclosing the fact an applicant is attempting to purchase a firearm and the same government interest would be served. Therefore, both disclosures are unconstitutional.  The disclosure of medical information is unconstitutional

because it is not narrowly tailored.  And the disclosure of firearms information to Plaintiff's doctor is unconstitutional because it does not serve a government interest and it is not narrowly tailored.

### The Disclosure Requirement Violates the Second Amendment

The Supreme Court has "consistently refused to allow government to chill the exercise of constitutional rights by requiring disclosure of protected, but sometimes unpopular, activities." *Thornburgh*, 476 U.S. at 767; *see also Lamont*, 381 U.S. at 306–07; *Talley*, 362 U.S. at 64–65; *NAACP*, 357 U.S. at 462–65. It does not matter whether the government's disclosure of private personal information is "an effort to suppress" the constitutional rights in question. *NAACP*, 357 U.S. at 461. Indeed, "[t]he governmental action may appear to be totally unrelated to protected liberties." *Id.* What matters is the "practical effect" of the compelled disclosure on the free exercise of constitutional rights. Public disclosure is barred if it would suppress, curtail, discourage, dissuade, or otherwise deter the free exercise of protected liberties. *Id.* at 461–63.

For example, in *Thornburgh*, the Court struck down a statute mandating the compilation and permitting public access to personal identifying information of women who had an abortion. *Thornburgh*, 476 U.S. at 765 (quoting statute); *see also id.* at 766. As the Supreme Court explained:

> Pennsylvania's reporting requirements raise the specter of public
> exposure and harassment of women who choose to exercise their

personal, intensely private, right, with their physician, to end a
pregnancy. Thus, they pose an unacceptable danger of deterring the
exercise of that right, and must be invalidated.

476 U.S. at 767–68 (citations omitted).

Information about citizens choosing to exercise a politically divisive,

controversial, or unpopular constitutional right "must be protected in a way that

assures anonymity," because an individual may become "reluctant" to exercise her

right "if there exists a possibility that her decision and identity will become known

publicly." *Id.* at 766–67. "It is inherent in the right . . . that the right may be

exercised without public scrutiny and in defiance of the contrary opinion of the

sovereign or other third parties." *Bellotti v. Baird*, 443 U.S. 622, 655 (1979)

(Stevens, J., concurring).

Requiring Plaintiff to disclose to his doctor that he is purchasing a firearm

has the effect of chilling his Second Amendment rights because applicants may

become reluctant to purchase a firearm if they know their doctor and other medical

personnel will know they are doing so.  This is unconstitutional due to the holdings

in the above cases. And there is absolutely no need for the City to disclose this

information to achieve their stated purpose.  The City could simply send a request

to an applicant's doctor along with a release form in order to receive the desired

medical files (not all medical files).  Even under intermediate scrutiny which is the

lowest standard that could apply for the reasons stated in the Second Amendment

section above, there is no important government interest to disclosing this information to applicant's doctor. Even if there is, that reason is not narrowly tailored.

**Vagueness/Fair Notice**

Alternatively, if this Court finds that Plaintiff can be permissibly denied firearms under H.R.S. §134-7(c)(3) until he is medically cleared, then the statute is unconstitutionally vague.  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  H.R.S §134-7(c)(3) applies to "persons who have been  diagnosed as having a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association".  However, as Plaintiff's expert explains in his declaration the current diagnostic manual of the American Psychiatric Association ("DSM"). does not define psychiatric conditions as "significant". See Complaint Exhibit E Declaration of Doctor Dennis Petrocelli. Therefore, it is unclear what conditions prohibits Plaintiff from owning firearms. Therefore, H.R.S. §134-7(c)(3) fails to provide fair warning of what is a prohibiting mental condition. H.R.S. §134-7(c)(3) is unconstitutionally vague both facially and as applied to Plaintiff.

This Court should find Plaintiff is likely to succeed on the merits for all the reasons laid out above.

## Plaintiff Will Suffer Irreparable Harm

If this Court concludes that Plaintiff is likely to prevail on his constitutional claims, the remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be treated no differently. *See McDonald*, 561 U.S. at 780; *see also Ezell*, 651 F.3d at 700 (a deprivation of the right to arms is "irreparable and having no adequate remedy at law.")

This Court should conclude "that Plaintiff has established a likelihood of irreparable harm…At issue in this litigation is the alleged infringement of Plaintiff's right to bear arms for self-defense …, the very right that the *Ezell* court considered." *Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *40, 2012 WL.

## Granting Preliminary Injunctive Relief is in the Public Interest

The last two preliminary injunction elements merge when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). For similar reasons, granting preliminary injunctive relief is clearly in the public interest. When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The public interest thus tips sharply in Plaintiff's favor. *Klein*, 584 F.3d at 1208. After all, doing so would merely return to the status quo, where Plaintiff legally owns *his* firearms. The City "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)). On the other hand, granting an injunction will end the ongoing violation of Plaintiff's rights.

The Court should conclude "that it is in the public interest to uphold Plaintiff's Constitutional right to bear arms in self-defense ..., and accordingly finds that this factor weighs in favor of granting the preliminary injunction." *Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *44, 2012 WL 2526923. This Court should find the same here.

## Waiver of Bond is Proper and Appropriate Under These Circumstances

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d

1319, 1326 (9th Cir. 1985). All these factors are true here, as illustrated above, thus rendering a waiver both proper and appropriate.

## This Court Should Consolidate Pursuant to Rule 65(a)(2)

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. This Court should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits*." Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020). Furthermore, as established above, Plaintiff is currently suffering irreparable harm and would thus, benefit from a consolidated hearing.

## Conclusion

The motion should be granted.

Dated: April 3, 2022.

Respectfully submitted,

/s/*Kevin Gerard O'Grady*
 Kevin O'Grady

/s/ *Alan Beck*

Alan Alexander Beck