Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL SANTUCCI<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU, and HOLLY T. SHIKADA, in her Official Capacity as the Attorney General of the State of Hawaii<br><br>Defendants. | Civil Action No. 22-CV-00142-DKW-KJM<br><br>OPPOSITION TO DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS [19]<br><br>Hearing date: July 18, 2022 at 10:00 a.m.<br>Honorable Judge: Derrick K. Watson |

## OPPOSITION TO DEFENDANT CITY AND COUNTY OF HONOLULU'S

## MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................... iii

I.    Introduction ...................................................................................1

II.   Standard For *Monell* Liability ......................................................2

III.   The City Has a Policy of Prohibiting People Without Evidence .................3

IV.   Mr. Santucci's Privacy Claim Confers *Monell* Liability .............................6

V.   The City Does Not Dispute Mr. Santucci's Second Amendment Claim .......11

VI.   The State Believes the City is Required to Make an As-Applied Challenge ………………………………………………………………………13

VII.   The City Has Expressly Incorporated and Adopted State Law .................14

VIII.  Mr. Santucci Can Bring His Claims Under His Other Jurisdictional Statutes ………………………………………………………………………19

IX.   Conclusion.................................................................................22

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Anderson v. City of Boston*, 375 F.3d 71, (1st Cir. 2004)........................................12

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397 (1997) ...............11

*Bell v. Hood*, 327 U.S. 678, (1946)........................................................................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................1, 6

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388,
(1971) ........................................................................................................................ 21

*Cal. Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172 (9th Cir. 2007)...............10

*Califano v. Sanders*, 430 U.S. 99 (1977) ................................................................ 20

*Chapman v. Hous. Welfare Rights Org*., 441 U.S. 600 (1979) .............................. <u>19</u>

*Cooper v. Dillon*, 403 F.3d 1208, (11th Cir. 2005) ................................................. 17

*Cooper* in *Ness v. City of Bloomington, 11 F. 4th 914 (U.S. 8th Cir. 2021)*........... 18

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................................7

*Doe v. Attorney Gen. of United States*, 941 F.2d 780 (9th Cir. 1991).............. 7, 8, 9

*Doe No. 1 v. Putnam County, 344 F. Supp. 3d 518*.................................................... 7

*Ferm v. United States Tr. (In re Crawford)*, 194 F.3d 954 (9th Cir. 1999). .... 7, 8, 9

*Hous. Mun. Emple. Pension Sys v. Bofl Holding, Inc*., 977 F.3d 781 (9th Cir. 2020)
....................................................................................................................................1

*Intellicheck Mobilisa v. Wizz Sys., LLC*, 173 F. Supp. 3d 1085 (W.D. Wash. 2016)
.................................................................................................................................. 12

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014)..................................14

*Juzumas v. Nassau Cty.*, No. 20-0086-cv, 2022 U.S. App. LEXIS 12820 (2d Cir.
May 12, 2022)..........................................................................................................17

*Knievel v ESPN*, 393 F.3d 1068 (9th Cir. 2005).........................................................1

*Kuba v. 1-A Agricultural Ass'n*, 387 F.3d 850 (9th Cir. 2001)................................10

*Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375 (3d Cir.
1994) ........................................................................................................................12

*Lynch v. Household Fin. Corp.*, 405 U.S. 538 (1972) ............................................ 20

*Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015)................................................17

*McDonald v. City of Chi., 561* U.S. 742 (2010) ........................................................9

*Mendiola-Martinez v. Arpaio*, 836 F.3d 1239 (9th Cir. 2016) ...............................11

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ............................................1, 3

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015)...................9

*Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425 (1977)................................................7

*Peruta v. Cty. of San Diego*, 771 F.3d 570 (9th Cir. 2014) ............................. 16, 22

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) ...........................................7

*Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir. 1991)...........................12

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006) .......12

<u>*Tolbert v. Queens Coll.*</u>, 242 F.3d 58 (2d Cir. 2001)................................................12

*Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009) ......................................6

*Tucson Woman's Clinic v. Eden*, 371 F.3d 1173 (9th Cir. 2004) ............................7

*United <u>States v. Dunkel</u>*, 927 F.2d 955 (7th Cir. 1991) ...........................................12

*United States v. Elder*, 90 F.3d 1110 (6th Cir. 1996) ...............................................12

*Whalen v. Roe*, 429 U.S. 589 (1977) ...........................................................7

*Wong v. City & Cty. of Honolulu*, 333 F. Supp. 2d 942 (D. Haw. 2004)...............15

*Young v. Hawaii*, 548 F. Supp. 2d 1151 (D. Haw. 2008)........................................15

*Young v. State of Hawaii*, 992 F.3d 765 (9th Cir. 2021) .......................................13

*Yukutake v. Conners*, 554 F. Supp. 3d 1074 (D. Haw. 2021)................................14

## Statutes

28 U.S.C. § 1343 ..................................................................... 12, 17, 18

28 U.S.C. § 2201 ..................................................................... 17, 18

28 U.S.C. § 2202.......................................................................... 17,18

28 U.S.C. § 2403 ..................................................................... 18, 22

28 U.S.C. § 1331 ..................................................................... 17, 19

28 U.S.C. § 41(1)...........................................................................19

42 U.S.C. § 1988 ............................................................................ 17

42 U.S.C. § 1983 ..................................................................... 2,17, 20

H.R.S. § 91 ..................................................................................4

H.R.S. §134-2...................................................... 4, 12, 14, 16, 17

H.R.S. §134-3................................................................................12

H.R.S. § 134-7....................................................................................3

Penal Law § 400.00(11)(c) ...........................................................16

## Rules

Honolulu, Haw., Rev. Ordinances §1-9.1 ................................................4

Federal Rules of Civil Procedure 5.1 ................................................. 22

**Other Authorities**

*Yukutake et al v. Connors et al* 1:19-cv-00578-JMS-RT  Doc. No. [99] Page ID
   #959-960 ................................................................................................ 2, 13, 15

I.      Introduction

The City and County of Honolulu ("City") wishes to wash its hands of liability in Mr. Santucci's case by claiming that its conduct is merely the result of enforcing state law. "At the pleading stage, the plaintiff's task is to allege with particularity facts 'plausibly suggesting' relief can be obtained[.]"[12] As shown below, Mr. Santucci has plausibly alleged the City is liable for its conduct because it has enacted at least two distinct policies which have violated Mr. Santucci's constitutional rights.  Those policies are sufficient to impose liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  The City does not dispute the disclosure to Mr. Santucci's doctor about his firearms acquisition is a city policy. Instead, the City wishes this Court to prematurely rule on the merits of that claim. While this Court should not, this Court should find that Mr. Santucci has plausibly alleged a violation of his privacy rights.

Moreover, the City does not discuss Mr. Santucci's Second Amendment claim regarding the doctor's letter at all. Therefore, the City has waived any argument that this claim should be dismissed.  Even if these policies did not exist,

---

[1] *Hous. Mun. Emple. Pension Sys v. Bofl Holding, Inc*. (*In re Bofl Holding, Inc. Sec. Litig*), 977 F.3d 781, 791 (9th Cir. 2020) (Quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[2] "When ruling on a motion to dismiss, we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

this Court has jurisdiction to rule on a state statute via a lawsuit against a

municipality.  In fact, the State of Hawaii has taken the position in recent litigation

that it is a requirement that the City be a part of litigation in order for this Court to

rule on an as-applied challenge to a state firearms statute which is implemented by

the City.[34] For the reasons laid out below, the City's motion to dismiss should be

denied.

## II.    Standard For *Monell* Liability

As argued below, Mr. Santucci disputes the City's contention that it is

immune from *Monell* liability because it is merely enforcing nondiscretionary state

law and that *Monell* is the only avenue by which suit can be brought against the

City.  Under *Monell,* a municipality can be held liable under 42 U.S.C. §

1983 when "execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may be fairly said to represent official

policy, inflicts the injury that the government as an entity is responsible for under §

---

[3] *Yukutake et al v. Connors et al* 1:19-cv-00578-JMS-RT Doc. No. [99] Page ID #959-960 (attached).  ("In the event Defendant was not clear in her Counter Motion for Summary Judgment, she is not merely "suggesting" that the Plaintiffs waived their as-applied challenge by dismissing the City and County, she is declaring unequivocally that they did so.").

[4] Mr. Santucci is bringing both a facial challenge and an as-applied challenge to the relevant statues and policies. *See* Complaint Prayer for Relief ¶ 2.

1983," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). As shown below, the City has made several distinct policy choices which impose *Monell* liability.

###    III.    The City Has a Policy of Prohibiting People Without Evidence

The City has implemented a policy distinct from state law of prohibiting persons from firearm ownership without evidence that they are prohibited under state law. In relevant part, H.R.S. § 134-7(c)(3) only prohibits individuals who have been diagnosed with "a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association," *Id.* There is no evidence that Mr. Santucci has been diagnosed as such.

Mr. Santucci filled out several forms during the permit to acquire process. Complaint ¶ 32. Mr. Santucci marked yes to one question which asked whether or not Plaintiff had been "diagnosed as having a behavioral, emotional or mental disorder(s)." Complaint ¶ 39. As the City concedes, the questionnaire Mr. Santucci filled out did not ask whether he had been diagnosed with a significant behavioral, emotional, or mental disorders as defined by the most current diagnostic manual of the American Psychiatric Association. City's Motion to Dismiss ("City MTD") at 6. Rather, it only asked whether Mr. Santucci had been "diagnosed as having a behavioral, emotional, or mental disorder(s)," ECF No. 1-2, Page ID #39. Furthermore, despite having access to Mr. Santucci's medical

3

records due to state law, the City made no effort to determine whether he was prohibited. *See* H.R.S. §134-2 (c).

Mr. Santucci suggests in his complaint that the City could send out an additional questionnaire in the event a firearm applicant marks "yes" to question 11 in the state issued form in order to ensure only persons who are disqualified under state law are prohibited.  In response, the City argues that the forms must be uniform throughout the state. City. City MTD at 7.  There is nothing in the statutory scheme which prohibits the City from sending out its own forms or documents ***in addition*** to the ones proscribed by the State. The City has this authority pursuant to H.R.S. § 91. The City acknowledges this fact in its ordinances.[5]  In fact, the City already does so in its letter to applicants' doctors. However, in the event the City does not wish to send out an additional form it has many other options to determine whether someone is prohibited by state law.  *E.g.,* it could conduct an inspection of the applicant's medical records as state law allows. *See* H.R.S. §134-2 (c).

---

[5] *See* Honolulu, Haw., Rev. Ordinances §1-9.1 Adoption of rules and regulations. "The head of any executive agency whose power or function as prescribed by law directly affects the public, may promulgate rules and regulations having force and effect of law pursuant to HRS Chapter 91, setting forth procedures that are necessary for such agency in dealing with the public concerning such power or function. (Sec. 1-10.1, R.O. 1978 (1983) Ed.)), available at, https://www.honolulu.gov/rep/site/ocs/roh/ROH_Chapter_1_.pdf (last accessed on May 24, 2022)

Instead, the City has adopted a policy of requiring persons, such as Mr.
Santucci, to receive medical clearance they are no longer affected by a significant
behavioral, emotional, or mental disorders as defined by the most current
diagnostic manual of the American Psychiatric Association without any evidence
that they ever have been affected by such a disorder in order to own a firearm. The
term significant behavioral, emotional, or mental disorders does not exist in the
most current diagnostic manual of the American Psychiatric Association. *See*
Complaint Exhibit E. The most current diagnostic manual of the American
Psychiatric Association does not categorize disorders as significant or
insignificant. *Id.* The City observes that, assuming Mr. Santucci is correct, that
makes the statute constitutionally infirm. *See* City MTD at 8. That is all the more
reason for the City not to prohibit Mr. Santucci from firearms ownership.

The City does not dispute prohibiting Mr. Santucci is unconstitutional. It
simply claims that it is compelled to do so under state law.  However, that is not
the case.  There is nothing under state law which says once a person marks "yes"
on question 11 of the questionnaire he is prohibited from firearm ownership.  State
law says it is persons who have been diagnosed with a significant behavioral,
emotional, or mental disorders as defined by the most current diagnostic manual of
the American Psychiatric Association that are disqualified.  The City has gone
beyond state law and made a policy choice to prohibit *everyone* who marks "yes"

on the questionnaire without any evidence those people are prohibited.  As part of this policy, the City also confiscates firearms from persons which it deems to be prohibited. *See* Complaint ¶ 43.  The Court should find that Plaintiff has plausibly alleged the City maintains a policy which makes it liable under *Monell*.

IV.    Mr. Santucci's Privacy Claim Confers *Monell* Liability

The City does not dispute the City's letter to an applicant's doctor is a city policy.  Rather they fight this claim on the merits.  Thus, the City implicitly concedes that the City's disclosure by letter is a city policy. While the City's disclosure violates privacy rights, specifically that Plaintiff is seeking to obtain a firearm and exercise a fundamental constitutional right, it is premature for this Court to rule on the merits of this claim.  A court may not grant a motion to dismiss for failure to state a claim "even if it strikes a savvy judge that . . . recovery is very remote and unlikely," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citation omitted). "So long as the pleadings suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief,' a court may not dismiss," *Tooley v.  Napolitano*, 556 F.3d 836, 839, 384 U.S. App. D.C. 393 (D.C. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). This Court should find that Mr. Santucci has plausibly alleged that the City's disclosure policy violated his privacy rights.

The Constitution protects personal information in which an individual has a "legitimate expectation of privacy," *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 458 (1977). The "Fourteenth Amendment's concept of personal liberty protects the individual interest in avoiding disclosure of personal matters," *Whalen v. Roe*, 429 U.S. 589, 598 n.23, 599 (1977). *See also Tucson Woman's Clinic v. Eden*, 371 F.3d 1173, 1193 (9th Cir. 2004). "The constitution protects two kinds of privacy interests. 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions,'" *Doe v. Attorney Gen. of United States*, 941 F.2d 780, 795 (9th Cir. 1991) (quoting *Whalen v. Roe*, 429 U.S. 589, 599, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977). The Ninth Circuit expressly found that this right to informational privacy applied to firearms even before *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008) found firearms ownership to be a fundamental right. In *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) the Ninth Circuit found plaintiffs had a right to privacy in their ownership of assault rifles, though that privacy right was outweighed by the state's interests.[6]

---

[6] *In Doe No. 1 v. Putnam County* which the City cites to, the district court was constrained by Second Circuit precedent that, unlike the Ninth Circuit, recognized a right to informational privacy only in limited "factual circumstances involving one's health and personal financial information." 344 F. Supp. 3d 518, 540 (S.D.N.Y. 2018). Cf., *e.g., Silveira*, 312 F.3d at 1092; *Ferm v. United States Tr. (In re Crawford)*, 194 F.3d 954, 958 (9th Cir. 1999).

The City's letter affects Mr. Santucci's privacy interest because it discloses he is acquiring a firearm to his doctor. Per *Silveira* that implicates a privacy interest because it discloses his personal matter i.e., his desire to acquire a firearm. Once it is established that a privacy interest is at stake [o]ur precedents demand that we "engage in the delicate task of weighing competing interests" to determine whether the government may properly disclose private information. *Ferm v. United States Tr. (In re Crawford)*, 194 F.3d 954, 959 (9th Cir. 1999) (quoting *Doe v. Attorney General*, 941 F.2d at 796).

> The relevant factors to be considered include:
>
> . . . the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Ferm v. United States Tr. (In re Crawford)*, 194 F.3d 954, 959 (9th Cir. 1999) (quoting *Doe v. Attorney General,* 941 F.2d at 796). "This list is not exhaustive, and the relevant considerations will necessarily vary from case to case. In each case, however, the government has the burden of showing that 'its use of the information would advance a legitimate state interest and that its actions are

narrowly tailored to meet the legitimate interest,'" *Id.* (quoting *Doe v. Attorney General,* 941 F.2d at 796).

Here and distinguishable from *Silveira*, the private information at issue is Mr. Santucci's exercise of a "fundamental" right. *McDonald v. City of Chi., 561 U.S. 742, 745, 130 S. Ct. 3020, 3023 (2010). Silveira* predates *Heller* and mistakenly held that the Second Amendment did not confer an individual right. Moreover, in *Silveira* the Court was dealing with assault weapons. "At least since the enactment of the federal assault-weapons ban, semiautomatic assault weapons have been understood to pose unusual risks" compared to other firearms. *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 262 (2d Cir. 2015). "These weapons are disproportionately used in crime," *Id.* Thus, the government has a heightened justification compared to regulation that deals with all firearms which is the case here. *Silveira* is binding to the extent that it holds that firearms ownership implicates a privacy interest. However, the government's interest in disclosure and Mr. Santucci's interest in keeping his information private is distinguishable from *Silveira*.

There is a high likelihood of harm in the event of accidental disclosure because criminals will know what home to target if they wish to steal a firearm. It is unclear what safeguards are in place to protect against disclosure. There is no need for a doctor to know that an applicant is in the process of purchasing a

9

firearm.  All that is needed to for the City to inform a doctor that an applicant has

waived his right to medical privacy and request that the doctor fill out a form with

the same questions.  Furthermore, the H.R.S. does not require this disclosure.

Ultimately, this comes down to a matter of tailoring[7]. The government interest in

sending an applicant's doctor a letter is to determine whether an applicant has been

diagnosed with a disqualifying condition. Whether or not that is a legitimate state

interest, the exact same information could be had without disclosing an applicant's

firearm purchase to his doctor.  Therefore, the City's disclosure on the letter is not

narrowly tailored. And thus, violates Mr. Santucci's privacy rights.  All of this

balancing means that, at this stage, Plaintiff has pled allegations sufficient to

establish *Monell* liability.

The City goes on to claim that it was not deliberately indifferent to Mr.

Santucci's rights. However, it does not give a case citation for why this is relevant.

Mr. Santucci believes the City is referring to when a person is injured by a

municipal employee if that person wishes to sue the municipality then he must

---

[7] Mr. Santucci has not been able to identify a definition of narrow tailoring within privacy law but in the First Amendment context, the Ninth Circuit has said "in determining whether legislation is narrowly tailored, we consider whether the restriction "(1) promotes a substantial government interest that would be achieved less effectively absent the regulation, and (2) [does] not burden substantially more speech than is necessary to further the government's legitimate interests."" *Cal. Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1183 (9th Cir. 2007) (quoting *Kuba v. 1-A Agricurual Ass'n*, 387 F.3d 850, 861 (9th Cir. 2001)

show the municipality was deliberately indifferent to the potential for injury.  That is not relevant here. Mr. Santucci is claiming that the City's official policy itself is the cause of his constitutional violation.

"Where a plaintiff claims that a municipal action *itself* violates federal law," as Mendiola-Martinez does here by directly challenging what she contends are policies of the County Defendants and the Medical Center, "the issues of fault and causation are straightforward," *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). In such situations, "proof that the municipality's decision was unconstitutional would suffice to establish that the municipality itself was liable for the plaintiff's constitutional injury", *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247-48 (9th Cir. 2016). The letter at issue is an official action of the City. The City does not dispute this. The fact that the disclosure is unconstitutional is all that is needed to impose *Monell* liability. This Court should find that Mr. Santucci has plausibly alleged a claim that his privacy rights have been violated by the City.

V.     The City Does Not Dispute Mr. Santucci's Second Amendment Claim

As established above, the City does not dispute that their letter to Mr. Santucci's doctor is sufficient to confer *Monell* liability onto the City if a constitutional violation has occurred.  In Mr. Santucci's complaint, he alleges that

this letter violates both his Fourteenth Amendment right to privacy and his Second

Amendment rights, including the chilling of his constitutional rights. As alleged in

the complaint, the City's letter "violates the Second Amendment because it

requires the disclosure of private information," Complaint ¶ 64.  "It thus, chills

Second Amendment conduct". Complaint ¶ 65. The City has not addressed Mr.

Santucci's Second Amendment claim regarding the disclosure requirement in its

motion.  Issues which are not briefed are waived. [8]

   This Court should find that "[t[his argument is inadequately briefed and thus

not properly before the court.  *Intellicheck Mobilisa v. Wizz Sys., LLC*, 173 F.

Supp. 3d 1085, 1108 (W.D. Wash. 2016). The City has waived its right to

---

[8] "See, e.g., Anderson v. City of Boston, 375 F.3d 71, 91 (1st Cir. 2004) ("When a
party includes no developed argumentation on a point . . . we treat the argument as
waived under our well established rule."); Tolbert v. Queens Coll., 242 F.3d 58, 75
(2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory
manner, unaccompanied by some effort at developed argumentation, are deemed
waived.") (internal quotation marks omitted); United States v. Elder, 90 F.3d 1110,
1118 (6th Cir. 1996) (same); Laborers' Int'l Union of N. Am. v. Foster Wheeler
Corp., 26 F.3d 375, 398 (3d Cir. 1994), cert denied, 513 U.S. 946, 115 S. Ct. 356,
115 S. Ct. 357, 130 L. Ed. 2d 311 (1994) ("An issue is waived unless a party raises
it in its opening brief, and for those purposes 'a passing reference to an issue . . .
will not suffice to bring that issue before this '") court. (quoting Simmons v. City of
Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991) , cert. denied, 503 U.S. 985, 112
S. Ct. 1671, 118 L. Ed. 2d 391 (1992)); United States v. Dunkel, 927 F.2d 955, 956
(7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does
not preserve a claim. . . . Especially not when the brief presents a passel of other
arguments . . . . Judges are not like pigs, hunting for truffles buried in briefs.")."
*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006)

challenge whether Mr. Santucci has plausibly alleged the City has violated his

Second Amendment rights.

VI.    The State Believes the City is Required to Make an As-Applied Challenge

Recently, the State of Hawaii, which is also a Defendant in this matter, took

the position that in order for a Plaintiff to make an as-applied challenge to

Hawaii's firearm permitting scheme, the City had to be the Defendant.

> The statutes the Plaintiffs challenge, Hawaii Revised Statutes § 134-2(d) and § 134-3(a), are clear that it is the county chiefs of police who issue permits to acquire firearms, and with whom firearms are registered. In the event Defendant was not clear in her Counter Motion for Summary Judgment, she is not merely "suggesting" that the Plaintiffs waived their as-applied challenge by dismissing the City and County, she is declaring unequivocally that they did so. Again, from *Young v. State of Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021): "A facial challenge is a claim that the legislature has violated the Constitution, while an as-applied challenge is a claim directed at the execution of the law." The City and County through its police department executes the statutory provisions the Plaintiffs complain of. The Plaintiffs' as-applied challenge went away when they chose to dismiss the City and County with prejudice. If the Plaintiffs had wanted to continue pursuing as-applied claims then they should not have voluntarily dismissed the City and County from this action. Instead, they chose to pursue only their claims against Defendant in her official capacity, i.e. the State, and those claims cannot be as-applied challenges because the State does not apply the firearm permitting and registration laws.

*Yukutake et al v. Connors et al* 1:19-cv-00578-JMS-RT  Doc. No. [99] Page ID

#959-960 (attached).

13

Judge Seabright did not reach this issue because "both challenged provisions are facially unconstitutional. Thus, the court need not consider whether Plaintiffs have preserved their as-applied challenges." *Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1080 n.6 (D. Haw. 2021). As applied challenges to laws on Second Amendment grounds are allowed in this circuit. In a challenge to two San Francisco ordinances, the Ninth Circuit reached the Plaintiffs as-applied challenge. "We begin by addressing Jackson's facial and as-applied challenge to the constitutionality of section 4512." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014). It cannot be that the City is immune from suit and also required to be a party to an action. This Court should find the City is a proper party to this suit.

> VII.    The City Has Expressly Incorporated and Adopted State Law

Here, independent of the city policies discussed above, the City can be held liable because its implementation of state law is discretionary.[9] A municipality can be held liable when there is "express incorporation and adoption of state law and

---

[9] The City cites to a series of decisions which are distinguishable. Each of the cases citied to deal with situations where the municipality had <u>no</u> discretion in implementing state law. E.g. *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245 (9th Cir.1999) deals with whether a county prison can be held liable for wrongfully detaining someone when it had no authority to release him. Here, H.R.S. § 134-2 gives discretion to the Chief as to whether he will issue a permit to acquire and is thus distinguishable. Furthermore, unlike the cited to cases, the City further incorporates state law by issuing the State forms with the HPD seal. *See* Complaint Exhibit C.

policy" *Wong v. City & Cty. of Honolulu*, 333 F. Supp. 2d 942, 951 (D. Haw. 2004). Here, the City has expressly incorporated state law and policy on firearms. Hawaii law puts the power to issue permits in the hands of the police chief. Much in the same way it does with issuing permits to carry. Pursuant to H.R.S. §134-2, a person cannot obtain a firearm within the state without first obtaining a permit from the chief of police in the county in which they reside. H.R.S. §134-2 puts the decision to issue a permit squarely on the police chief. "The chief of police of the respective counties ***may issue*** permits to acquire firearms," *Id* (Emphasis added). Thus, the Chief of Police is the one who ultimately decides to issue a permit or not. The police chief is the sole person deciding how the law is interpreted with regards to issuing permits. Any denial of a permit is at the discretion of the police chief. The Chief in his official capacity is the same entity as the City. *See Young v. Hawaii*, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008) ("The claims asserted against Defendants Harry Kim and Lawrence K. Mahuna in their official capacities duplicate the claims asserted against the County of Hawaii"). Therefore, the City via the Chief adopted state law by making the decision to issue permits. Moreover, some of the forms Mr. Santucci filled out bear HPD designation. Complaint ¶ 40; Complaint Exhibit C. The City's labeling state forms with HPD's seals is an overt act of incorporating state law and policy. "The City and County through its police department executes the statutory provisions the Plaintiffs complain of,"

15

*Yukutake et al v. Connors et al* 1:19-cv-00578-JMS-RT Doc. No. [99] Page ID #959-960 (attached).  The City is a proper party to this lawsuit.

Moreover, to the extent that Mr. Santucci attacks how the statute has been applied against him by the City, his claim has many parallels to the Ninth Circuit's opinion in *Peruta v. Cty. of San Diego*, 771 F.3d 570, 575 (9th Cir. 2014).  There, the Ninth Circuit denied California's attempted intervention when a three-judge panel opinion ruled on the constitutionality of San Diego's implementation of California's handgun permit statute because "the opinion never 'draws into question' the 'constitutionality' of any California statute—it only questions San Diego County's exercise of regulatory authority under such state statutes". *Id*. "That the opinion engages in analysis and interpretation of California statutes does not change that the only 'objection' raised and decided is the exercise of authority under such statutes, not the statutes themselves". *Id* at 576.

This is in line with the Second Circuit's jurisprudence. In order to determine whether a municipality can be held liable for enforcing a state law "[f]irst, we ask whether the municipality had a 'meaningful choice' as to whether it would enforce the law. *Id.* If it did, then we ask whether the municipality adopted a 'discrete policy' to enforce the law that represented a 'conscious choice' by one of its policy makers. *Id.* If both conditions are met, then the municipality exercises a sufficient degree of autonomy to face liability for its policy choices," *Juzumas v. Nassau*

16

*Cty.*, No. 20-0086-cv, 2022 U.S. App. LEXIS 12820, at *13 (2d Cir. May 12,

2022).

Here, the City has a meaningful choice as to whether it will issue permits

because H.R.S. § 134-2 says the Chief "may issue" permits to acquire.  In *Juzumas*

the Court denied *Monell* liability on the relevant claim because "Penal Law §

400.00(11)(c) directs that long guns 'shall be removed and declared a nuisance' in

the event that they are not surrendered upon the suspension or revocation of

a pistol license. The language following 'shall' in a statute is 'mandatory, not

precatory,'" (Emphasis added) *See Mach Mining, LLC v. EEOC*, 575 U.S. 480,

486, 135 S. Ct. 1645, 191 L. Ed. 2d 607 (2015). This mandatory language ends our

inquiry," *Id.* at *13-14 Here, the Chief "may issue" permits to acquire and thus has

a meaningful choice whether, and how, to implement the law. *See* H.R.S. §134-2.

And the City via the Chief has implemented H.R.S. § 134-2 via the policies

complained about by Mr. Santucci.

This is also in line with the 11th Circuit's jurisprudence. In *Cooper v. Dillon,*

the 11th Circuit evaluated the "constitutionality under the First Amendment of a

Florida statutory provision which makes it a misdemeanor for a participant in an

internal investigation of a law enforcement officer to disclose any information

obtained pursuant to the investigation before it becomes public record". *Cooper v.*

*Dillon*, 403 F.3d 1208, 1211 (11th Cir. 2005). The plaintiff invoked 42 U.S.C 1983

and sued "the Chief of Police of Key West" for enforcement of the statute. *Id* at

1213. The Chief argued "that his enforcement of a state law could not subject the

municipality to liability". *Id* at 1221. The 11th Circuit "disagree[d]". *Id.*

"First, state law demonstrates that Dillon was the ultimate policymaker for

police procedure in the City of Key West." *Id.* at 1222. "Second, based on this

authority, we find that Dillon's decision to enforce FLA. STAT. ch.

112.533(4) constituted a deprivation of constitutional rights sufficient for §

1983 liability." *Id.* "Second, based on this authority, we find that Dillon's decision

to enforce FLA. STAT. ch. 112.533(4) constituted a deprivation of constitutional

rights sufficient for § 1983 liability." *Id.* "Thus, Dillon's decision to enforce an

unconstitutional statute against Cooper constituted a "deliberate choice to follow a

course of action . . . made from among various alternatives by the official or

officials responsible for establishing final policy." *Id*. at 1223.

This 8th Circuit relied on *Cooper* in *Ness v. City of Bloomington* to not

impose liability on a municipality because the litigant "fails to allege that a city

policymaker adopted the *state* harassment statute as the official policy of

the *City* of Bloomington, or that the City has a policy or custom of enforcing the

statute in an unconstitutional manner." 11 F.4th 914, 922 (U.S. 8th Cir. 2021).  As

shown above, Mr. Santucci has alleged the City has made a deliberate choice to

incorporate and adopt state law. Moreover, Mr. Santucci is, in part, challenging the

City's "exercise of authority under such statutes". *Peruta* 771 F.3d 570, 575.

Thus, precedent and the weight of persuasive authority instructs the City is a

proper party to this suit.

VIII.    Mr. Santucci Can Bring His Claims Under His Other Jurisdictional Statutes

All the case law cited to by the City deals with liability under 42 U.S.C. §

1983. Even if this Court ruled in favor of the City on that issue, that would have no

impact on Mr. Santucci's ability to prosecute his lawsuit based on the other

jurisdictional vehicles he relies upon. Mr. Santucci has invoked 28 U.S.C. §§ 1331,

1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988 as his jurisdictional statutes.

Complaint ¶ 4.

28 U.S.C. § 1343 (3) gives the federal courts jurisdiction to hear any claim

"[t]o redress the deprivation, under color of any State law, statute, ordinance,

regulation, custom or usage, of any right, privilege or immunity secured by the

Constitution of the United States."  "Under § 1343 (3), Congress has created

federal jurisdiction of any civil action authorized by law to redress the deprivation

under color of state law "of any right, privilege or immunity secured by the

Constitution of the United States." *Chapman v. Hous. Welfare Rights Org.*, 441

U.S. 600, 612 (1979) (footnote omitted).

19

Similarly, 28 U.S.C. §1331 gives this court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[10] Here, Mr. Santucci has brought several claims alleging his rights secured by the United States Constitution have been deprived. "Thus, the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason, the District Court has jurisdiction." *Bell v. Hood*, 327 U.S. 678, 685 (1946).[11] Therefore, both 28 U.S.C. §§ 1331 and 1343 give this Court authority to rule on Mr. Santucci's claims even if this Court finds his claims cannot be brought against the City under 42 U.S.C. § 1983.

Mr. Santucci can also receive declaratory relief pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202. 28 U.S.C. § 2201 states "[i]n a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and

---

[10] "Section 1343 (3) applies only to alleged infringements of rights under "color of . . . State law," whereas § 1331 contains no such requirement." *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 547 (1972).

[11] Conferring jurisdiction pursuant to 28 U.S.C. § 41(1). 28 U.S.C. § 41(1) is the precursor to 28 U.S.C. § 1331. *See* https://www.govinfo.gov/content/pkg/USCODE-2011-title28/html/USCODE-2011-title28-partIV.htm (last visited 6/29/2022)("Other provisions of section 41(1) of title 28, U.S.C., 1940 ed., are incorporated in sections 1331, 1341, 1342, 1345, 1354, and 1359 of this title. (See reviser's notes under said sections.)"); *See also Califano v. Sanders*, 430 U.S. 99, 106 (1977) finding that 28 U.S.C. § 1331 is a "jurisdictional grant". *Id.*

20

other legal relations of any interested party seeking such declaration". *Id.* 28

U.S.C. § 2202 states that "[f]urther necessary or proper relief based on a

declaratory judgment or decree may be granted, after reasonable notice and

hearing, against any adverse party whose rights have been determined by such

judgment". *Id.* Here, there is a live controversy under the U.S. constitution as

alleged in the Complaint. Thus, this Court can confer declaratory relief. [12]

The federal rules recognize that a state statute can be challenged by bringing

suit against a municipality. 28 U.S.C. § 2403(b) provides:

> In any action, suit, or proceeding in a court of the United States to
> which a State or any agency, officer, or employee thereof is not a
> party, wherein the constitutionality of any statute of that State
> affecting the public interest is drawn in question, the court shall
> certify such fact to the attorney general of the State, and shall permit
> the State to intervene for presentation of evidence, if evidence is
> otherwise admissible in the case, and for argument on the question of
> constitutionality. The State shall, subject to the applicable provisions
> of law, have all the rights of a party and be subject to all liabilities of a
> party as to court costs to the extent necessary for a proper presentation
> of the facts and law relating to the question of constitutionality.

---

[12] If this is the result, there would be similarities to how in a *Bivens* action federal
officers can be sued under 28 U.S.C. § 1331 despite being immune to suit under 42
U.S.C. § 1983. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics*, 403 U.S. 388, 389 (1971) (holding that suit for 4th Amendment
violation is permitted against a federal agent using 28 U. S. C. § 1331). *See also Id*
at 405. (Harlan, Concurring) ("Conversely, if a general grant of jurisdiction to the
federal courts by Congress is thought adequate to empower a federal court to grant
equitable relief for all areas of subject-matter jurisdiction enumerated therein,
see 28 U. S. C. § 1331 (a), then it seems to me that the same statute is sufficient to
empower a federal court to grant a traditional remedy at law.")

*Peruta* 771 F.3d 570, 574. (quoting 28 U.S.C §2403).

"Similarly, Rule 5.1 requires '[a] party that files a pleading, written motion, or other paper *drawing into question* the constitutionality of a federal or *state statute*'" to 'file a notice of constitutional question' and serve such notice on the relevant sovereign's attorney general," *Id* (emphasis in original) (quoting USCS Fed Rules Civ Proc R 5.1). Why would these rules exist if there was no mechanism to attack a state statute via a suit against a municipality? The federal rules and circuit precedent demonstrate that the City is a proper party to this action.

## IX.    Conclusion

The City's motion to dismiss should be denied.

Dated: <u>June 24, 2021</u>.

Respectfully submitted,

<u>*/s/ Alan Beck*</u>
Alan Alexander Beck, ESQ

<u>/s/*Kevin Gerard O'Grady*</u>
Kevin Gerard O'Grady, ESQ