Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL SANTUCCI<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU and HOLLY T. SHIKADA, in her Capacity as the Attorney General of the State of Hawaii<br><br>Defendant. | Civil No. CV22-00142-DKW/KJM<br><br>PLAINTIFF'S REPLY TO DEFENDANT CITY'S MEMORANDUM IN OPPOSTION TO PLAINTIFF'S MOTION FOR PRELIMNARY INJUCTION<br><br><u>Hearing</u>:<br>Date: July 18, 2022<br>Time: 10:00 a.m.<br>Judge: Honorable Derrick K. Watson<br><br>Trial: None |

**<u>PLAINTIFF'S REPLY TO DEFENDANT CITY'S MEMORANDUM IN</u>**

**<u>OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMNARY</u>**

**<u>INJUNCTION</u>**

# Table of Contents

*I.   Introduction ................................................................................... 1*

*II.  Plaintiff Incorporates Its Memorandum In Opposition to Defendant City's Motion to Dismiss and its Reply to Defendant Shikada's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction ............................ 1*

*III. The City's Policies, Including Seizing Weapons And Denying Permits To Acquire Do Not Have Any Historical Analogue ................................................. 6*

*IV.  Granting Preliminary Injunctive Relief is in the Public Interest ............... 9*

*1V.  Conclusion.................................................................................. 10*

# Cases

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) .................. 9
*Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *44, 2012 WL 2526923 .......... 10
*Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *44, 2012 WL 2526923. .......... 10
*Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) ...................... 9
*Klein*, 584 F.3d at 1208 ................................................................................................ 9
*New York State Rifle & Pistol Association, Inc., et al. v. Bruen, Superintendent of New York State Police, et al* on June 23, 2022 ...................................................... 6
*Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ...................................... 9
*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ....................... 10

**Statutes**
HRS §134-7 .................................................................................................................. 9
HRS §334-59 .............................................................................................................. 5, 9
HRS 134-2 .................................................................................................................... 4
HRS 134-7 ............................................................................................................ passim
HRS 334-59 ................................................................................................................. 5

## I. Introduction

The City's memorandum in opposition to Plaintiff's motion for a preliminary injunction makes essentially the same arguments that the City made in its motion to dismiss. That is, the City argues that it was compelled to enforce state law, that is all it was doing, and that is insufficient to establish *Monell* liability. The City also argues that the other claims are too disconnected or insignificant to provide a basis for a claim, and here, the issuance of a preliminary injunction.

## II. Plaintiff Incorporates Its Memorandum In Opposition to Defendant City's Motion to Dismiss and its Reply to Defendant Shikada's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction

For the reasons stated in Plaintiff's memorandum in opposition to Defendant City's motion to dismiss, Plaintiff submits that *Monell* liability exists. More specifically, Plaintiff points out that the underlying facts are not in dispute even though City attempts to characterize them differently.

Plaintiff, who owned his owned weapons already, brought his personally owned weapons to the City's police department. Complaint Paragraphs 27, 32, 43. Plaintiff was required by law to register his own weapons with City and to seek permission to obtain a "permit to acquire" his own weapons. Complaint paragraphs 10, 11, 12, 32, 40. Plaintiff was provided documentation, by City, pertaining to the

permit to acquire. Complaint paragraphs 32, 40. Plaintiff completed the documentation answering "yes" to a question about having been diagnosed with *any* mental disorder. Complaint paragraphs 34, 35, 36, 37, 38, 39. Plaintiff is not a doctor and was not seen by a City doctor. Upon marking "yes," Plaintiff's personal weapons were seized. Complaint paragraph 43. Upon marking "yes," City provided to Plaintiff a form informing him he needed to obtain a statement that he no longer suffered from a significant behavioral, mental or emotional disorder. City never provided him a permit. Complaint paragraphs 41, 42, 43.

    City argues that the forms to be used are mandated. That argument is addressed in other Plaintiff filings. City acknowledges however that the question on the form, that City argues is the only form that can be used, does not answer the question that would prove that Plaintiff is in fact disqualified under HRS 134-7(c)(3). City Memo in Opp Page 8. Thus, at the time the question was answered by Plaintiff, City still had no evidence that Plaintiff was disqualified under HRS 134-7(c)(3). City does not dispute that at the time Plaintiff answered "yes" to the particular question, but to no other question that would have disqualified Plaintiff, the City still seized Plaintiff's firearms. City does not dispute that it has a policy of, when receiving a "yes" answer to the relevant question number 11, to seizing firearms, even those already previously owned by an applicant. Furthermore, City does not dispute that upon receiving a "yes" answer to a question it acknowledges

does not answer the relevant question, i.e., does not provide proof of disqualification under HRS 134-7(c)(3), it stops the permit process and does not issue a permit, and has not issued a permit to Plaintiff.

 Instead, City attempts to take the "yes" answer and shift the burden. City first, as an admission of its policy, argues that once it received a "yes" answer that did not prove disqualification, it was mandated, by merely following state law, to "ensure that he was medically documented to be no longer adversely affected". City Memo in opp. page 8. This means, when assembled together, that City knows that question eleven does not provide proof that an applicant is disqualified under HRS 134-7(c)(3), that when a "yes" to question eleven is received, City treats it as conclusive proof that Plaintiff is disqualified under HRS 134-7(c)(3), that then City seizes weapons, denies permits and shifts the burden to Plaintiff[1] to disprove disqualification under HRS 134-7(c)(3). With regard to the preliminary injunction that Plaintiff seeks it has several parts. Plaintiff requests that his firearms be returned to him, that Plaintiff receive a permit to acquire for all his firearms, that City not take any further action against Plaintiff with regard to HRS 134-7(c)(3), that City not enforce HRS 134-7(c)(3), and, as against Defendant Shikada, that HRS 134-7(c)(3) is unconstitutional as applied to Plaintiff and facially.

---

[1] The City's memorandum in opposition makes no distinction between the specifics of Plaintiff and any other person who marks down a "yes" answer to question eleven.

3

City makes no argument regarding the meaning of "significant mental, behavioral or emotional disorder as defined by the most current diagnostic manual of the American Psychiatric Association." With regard to how the City is treating the specific definition[2], suffice it to say, the City argues that it must ensure that Plaintiff is qualified[3]. Yet, City does not allege that any evidence, other than the "yes" answer to question eleven, exists that would disqualify Plaintiff. City does not argue or present evidence that its policies are constitutional, as opposed to the law generally. There are, however, many other avenues available and mandated by statute for City since it knows that question eleven does not answer the question necessary to prove disqualification under HRS 134-7(c)(3).

As alleged in the complaint, paragraphs 18, 19, 20, applicants undergo a background check. See HRS 134-2(e), 846-2.7. That background check includes access to the III, Interstate Identification Index, Complaint Exhibit A. That index includes a category specific to mental health, "Adjudicated Mental Health".

---

[2] City does not argue that the definition in the HRS somehow meets the post hoc definition of "lunatic" advanced by State in this litigation. In fact, City, despite the fatal disconnect between the statute and the questionnaire, treats a "yes" to question eleven as conclusive proof that Plaintiff has met the definition of the statute. Thus, this aspect must be addressed.

[3] Since City deemed Plaintiff and any other applicant that marks "yes" to question eleven as disqualified, and shifts the burden to Plaintiff, it is curious that City argues that it should not take Plaintiff's additional notation "not serious" at face value which means that further investigation is warranted. Yet, it performed no additional investigation to determine if Plaintiff was in fact disqualified.

4

Whatever may be the parameters to be entered into this database, there is no indication that Plaintiff was even run to determine whether or not he was in the database, rather, as soon as he marked "yes" to question eleven his weapons were seized and he was given documentation directing him to prove he was "no longer adversely affected." Furthermore, City did not determine if other state specific actions had occurred involving Plaintiff since City seized his weapons immediately upon seeing a "yes" to question eleven. For example, HRS §334-59, et seq, provides the framework for almost anyone to initiate hospitalization and evaluation of a person if there is "reason to believe that a person is imminently dangerous to self or others." These records in fact are tied to firearm permitting. HRS 334-59, Confidentiality of records provides, in part, "…Nothing in this section shall preclude the: (3) Disclosures made by a court or the Hawaii criminal justice data center of orders of involuntary civil commitment issued pursuant to section 334-60.5 for the purpose of firearms permitting or registration pursuant to chapter 134." City does not allege that this search was performed. Plaintiff submits that as alleged in the Complaint, once Plaintiff marked "yes" to question eleven, his weapons were seized, the permit was denied and the burden was shifted to him. Moreover, there was no notification that records under this section indicated that Plaintiff was disqualified.

In other words, the "strict statutory scheme," and Plaintiff would add, comprehensively onerous scheme, has numerous ways for City to follow state law and determine whether Plaintiff is in fact disqualified under HRS 134-7(c)(3). Instead, City merely took the "yes" answer as conclusive irrebuttable proof of disqualification.

### III. The City's Policies, Including Seizing Weapons And Denying Permits To Acquire Do Not Have Any Historical Analogue

The City has argued that it is only following state law and that the steps it took, including also informing another person that Plaintiff was acquiring a weapon, are therefore constitutional, and as such, no preliminary injunction should issue. In addition to the reasons stated above as to why City is subject to liability under *Monell* and why a preliminary injunction should issue, discussed below, a preliminary injunction should issue because City's policies do not have any historical analogue. Thus, it is likely that Plaintiff will succeed on the merits. The City policies complained of are all the policies listed in the complaint.

HRS 134-7(c)(3) is a twentieth century law that only exists in Hawaii. This lawsuit started on April 3, 2022. The United States Supreme Court issued its opinion in *New York State Rifle & Pistol Association, Inc., et al. v. Bruen, Superintendent of New York State Police*, et al on June 23, 2022. Defendant City filed its memorandum in opposition to Plaintiff's motion for preliminary injunction

on June 27, 2022. Defendant City did not seek a continuance of the filing date for its memorandum in opposition to Plaintiff's motion for preliminary injunction nor a continuance of the hearing on the motion for preliminary hearing set for July 18, 2022[4].

*Bruen* dealt with whether and how the government could impact a person's right to carry a firearm. The court ruled, in part, "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen* at page 8. The court continued that "Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command" Id.

*Bruen* clarified and made clear several important aspects of Second Amendment cases. First, if the plain text covers the act, then the Second Amendment presumptively protects the conduct. Then the burden is on the government which must affirmatively prove that the regulation in question "is consistent with the Nation's historical tradition of firearm regulation." Here,

---

[4] Nor did Defendant Shikada.

Plaintiff sought to register his firearms[5], and accordingly under current Hawaii law, complete a permit to acquire his firearms. Plaintiff sought to "keep" his arms, here literally since he already owned them.  Thus, the complaint covers presumptively protected conduct, keeping arms.  Thus, it is now the City's burden to prove that HRS 134-7(c)(3) and its policies are consistent with the nation's historical tradition of firearm regulation.  It has produced no proof nor made any argument that HRS 134-7(c)(3) or its policies satisfy the *Bruen* test.  Although Defendant Shikada made a post hoc rationalization that HRS 134-7(c)(3) has an historical analogue, Shikada points the finger at City and argues that its execution of the law is the problem.  To the extent that Shikada's arguments can bolster or defend City's policies, Plaintiff points out that City's policies are not the same as what Defendant Shikada argues are an historical analogue.

"Historical regulations of the right to bear arms focused more on how people *used* weapons—not who could own them." *Mai*, at 1088.  This comports with the *Bruen* case.  City does not attempt to show an historical analogue to "keeping" arms that looks like the underlying statute or its policies, i.e. that without evidence of dangerousness[6], that having sought or being diagnosed with

---

[5] Plaintiff does not concede that registration or a permit to acquire meet the *Bruen* test.  This lawsuit specifically addresses HRS 134-7(c)(3) and the other aspects of the registration and permitting system as delineated in the complaint.

[6] Or as Defendant Shikada might argue, being a "lunatic".  *If* there is a statute that might meet the *Bruen* test, and Plaintiff does not concede that it does, it would be

8

some malady, City could seize and deny "keep[ing]" arms. City also does not argue that its seizing of arms and denial of a permit to acquire arms was because its policy treated Plaintiff as "dangerous".

### IV. Granting Preliminary Injunctive Relief is in the Public Interest

The last two preliminary injunction elements merge when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). For similar reasons, granting preliminary injunctive relief is clearly in the public interest. When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).The public interest thus tips sharply in Plaintiff's favor. *Klein*, 584 F.3d at 1208. After all, doing so would merely return to the status quo, where Plaintiff legally owns *his* firearms. The City "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir.

---

HRS §334-59, et seq. That statutory framework is not connected in any way with HRS §134-7(c)(3).

9

2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)). On the other hand, granting an injunction will end the ongoing violation of Plaintiff's rights.

The Court should conclude "that it is in the public interest to uphold Plaintiff's Constitutional right to bear arms in self-defense …, and accordingly finds that this factor weighs in favor of granting the preliminary injunction." *Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *44, 2012 WL 2526923. This Court should find the same here.

### 1V. Conclusion

The motion should be granted.

Dated: July 5, 2022.

                         Respectfully submitted,

                         /s/*Kevin Gerard O'Grady*
                         Kevin O'Grady, ESQ.

                         */s/ Alan Beck*
                         Alan Alexander Beck, ESQ.