IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

|  |  |
|---|---|
| MICHAEL SANTUCCI,<br><br>        Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF HONOLULU<br>and HOLLY T. SHIKADA, *in her official*<br>*capacity as Attorney General of the State of*<br>*Hawaii*,<br><br>        Defendants. | Case No. 22-cv-00142-DKW-KJM<br><br>**ORDER (1) GRANTING IN PART<br>AND DENYING IN PART<br>PLAINTIFF'S MOTION FOR<br>PRELIMINARY INJUNCTION, AND<br>(2) GRANTING IN PART AND<br>DENYING IN PART DEFENDANT<br>CITY AND COUNTY OF<br>HONOLULU'S MOTION TO<br>DISMISS** |

On April 3, 2022, Plaintiff Michael Santucci filed a Complaint and a motion

for preliminary injunction against Defendants the City and County of Honolulu and

the Attorney General of the State of Hawaiʻi with respect to an application to

register firearms he brought into the State after moving here.   Santucci alleges that

he was required to deliver his firearms to the Honolulu Police Department (HPD)

after answering "yes" to a question on a "Firearm Application Questionnaire"

related to his mental health history.   Santucci argues that this result is contrary to

State law or, alternatively, that State law is unconstitutional.   Santucci further

alleges that, in applying to register his firearms, private personal

information−namely, his medical records and desire to acquire a firearm−have

been disclosed.   He argues that this too is unconstitutional.

Defendants have opposed the motion for preliminary injunction.   The Attorney General argues, *inter alia*, that the challenged State laws are constitutional.   The Attorney General also asserts that Santucci's claims may not be ripe because it is not clear whether HPD has granted or denied his application. The City and County of Honolulu (Honolulu), meanwhile, argues that it is merely enforcing State law and, thus, cannot be liable for any alleged problems that arise from said enforcement.   Honolulu further argues that Santucci's privacy-related claims fail.   Honolulu has also filed a motion to dismiss, raising similar arguments.

After settlement discussions between the parties failed to reach a resolution of Santucci's claims, the Court ordered supplemental briefing on the issue of whether those claims were ripe for adjudication.   All parties have now submitted supplemental briefs, with each side generally opposed on the issue.

Having reviewed the foregoing, including all briefing and exhibits attached thereto with respect to the pending motions, the Court finds, as further explained below, that Santucci is entitled to limited preliminary injunctive relief, while Honolulu is entitled to dismissal of Santucci's privacy-related claims, as alleged in the Complaint.   First, the Court agrees with Santucci that, at least with respect to the actions he challenges here—specifically, decisions requiring him to obtain

documentation from a doctor and to sign a medical information waiver—those

actions are final.   Second, the Court further agrees with Santucci that he is not

precluded from registering his firearms under Hawaiʻi law.   The Court, thus,

disagrees with Honolulu's counter-argument that it is merely enforcing said law,

given that HPD is alleged to have taken possession of Santucci's firearms.   Third,

the Court finds that Santucci's privacy-related claims, as alleged, are not supported

by the record.   Should he choose to do so, though, Santucci may amend those

claims.   Therefore, as set forth in more detail below, the motion for preliminary

injunction and motion to dismiss are GRANTED IN PART and DENIED IN

PART.

## FACTUAL BACKGROUND

The allegations of the Complaint and the exhibits attached thereto reflect the

following.   Santucci is a commissioned officer in the United States Navy.

Compl. at ¶ 21, Dkt. No. 1.   Prior to arriving in Hawaiʻi in February 2021,

Santucci "legally" owned several firearms.   *Id*. at ¶¶ 22, 27.   In May 2021,

Santucci saw a medical provider because he was feeling depressed and homesick.

*Id*. at ¶¶ 29-30.   Neither at this time, nor ever, though, was Santucci diagnosed as

having a "significant behavioral, emotional, or mental disorder as defined by the

most current diagnostic manual of the American Psychiatric Association nor was he treated for organic brain syndromes." *Id*. at ¶ 31.

In July 2021, Santucci filled out documents provided to him by HPD to register his firearms. *Id*. at ¶ 32. Santucci alleges that the documentation was "substantially identical" to the "blank form" attached to the Complaint as Exhibit B. *Id*. Part of this documentation is a "Firearm Application Questionnaire," which included questions concerning drug dependence, acquittal of a crime on the ground of mental disease, adjudication as a "mental defective," diagnosis for emotional or mental disorders, and treatment for organic brain syndromes. *Id*. at ¶ 34. Santucci responded "no" to the questions concerning drug dependence, acquittal of crime on the ground of mental disease, adjudication as a "mental defective," and treatment for organic brain syndrome. *Id*. at ¶¶ 35-38. However, because Santucci had been treated for depression, he responded "yes", adding "not serious[,]" presumably to the question concerning diagnosis for emotional or mental disorders. *See id*. at ¶ 39.[1]

---

[1]The Complaint does not specifically allege to which question Santucci responded "yes." *See* Compl. at ¶ 39. However, given the context of the surrounding allegations, it appears that Santucci is referring to the question concerning whether he has been diagnosed as having a behavioral, emotional, or mental disorder, *i.e.*, Question 11 of the questionnaire.

Apart from the Firearm Application Questionnaire, Santucci also received a "Medical Information Waiver" form.   *Id*. at ¶ 40.   Santucci alleges that a "blank" copy of the waiver form is attached to the Complaint as Exhibit C.   *Id*.   The waiver form would provide HPD with authority to access "any and all records which have a bearing on [the applicant's] mental health for the strict purpose of determining [his] qualification to acquire, own, possess, or have under [his] control, a firearm."   Exh. C at 2, Dkt. No. 1-3.[2]

In July 2021, Santucci received a letter from HPD, which he alleges is attached to the Complaint as Exhibit D (July 2021 Letter).   Compl. at ¶ 41.   The July 2021 Letter states that, during HPD's background check of Santucci, it was determined that he may have received treatment for one of the following: (1) dependence upon a drug; (2) a behavioral, emotional, or mental disorder "as defined by the most current manual of [the] American Psychiatric Association"; or (3) an organic brain syndrome.   Exh. D at 2, Dkt. No. 1-4.   The July 2021 Letter further stated:

> As such, in order to complete the processing of your application, we will require written certification from a licensed psychologist, psychiatrist, or medical doctor documenting that you are no longer adversely affected by the addiction, abuse, dependence, mental disease, disorder, or defect. No further action will be taken on your

---

[2]In citing to the exhibits attached to the Complaint, the Court cites the page number assigned in the top right corner of the document, *i.e.*, "Page 2 of 3."

application until the required letter is received.

*Id*.

At the same time, "Santucci delivered his firearms to HPD because he was told he had to."   Compl. at ¶ 43.   Although Santucci does not allege whether he submitted to HPD the written certification demanded in the July 2021 Letter, he alleges that no further action has been taken on his permit to acquire firearms, and HPD "still holds" his firearms.   *Id*.   According to Santucci, HPD does not possess any information proving that he has a significant behavioral, emotional, or mental disorder as defined by the most current diagnostic manual of the American Psychiatric Association (APA) or an organic brain syndrome.   *Id*. at ¶¶ 44-46.

Santucci further alleges that, in investigating an applicant's medical history, HPD sends an applicant's doctor a form disclosing that he is purchasing a firearm. *Id*. at ¶ 87.   Santucci alleges that a copy of the letter "typically" sent to doctors is attached to the Complaint as Exhibit F (Typical Letter).   *Id*.   Among other things, the Typical Letter states that the applicant identified therein has "applied for a permit to acquire a firearm…."   Exh. F at 2, Dkt. No. 1-6.   The Typical Letter also requests that the applicant's doctor respond to a "request for information" included with the same.   *Id*.   The "Request for Information" asks the doctor six "yes" or "no" questions concerning the applicant's possible drug dependence,

6

diagnosis of a "significant" behavioral, emotional, or mental disorder as defined by the most current diagnostic manual of the APA, and treatment for organic brain syndrome.   *Id*. at 4.

## PROCEDURAL BACKGROUND

On April 3, 2022, Santucci initiated this action with the filing of a Complaint against Honolulu and the Attorney General and a motion for preliminary injunction.   Dkt. Nos. 1, 5.   The Complaint asserts five substantive claims for violations of the Second Amendment, Due Process, and Equal Protection.   In the motion for preliminary injunction, Santucci argues that he has a likelihood of success on his claims, he will suffer irreparable harm, and public interest factors weigh in his favor.

Prior to any responses on the motion for preliminary injunction, Honolulu filed a motion to dismiss.   Dkt. No. 19.   On June 24 and June 27, 2022, the parties filed responses to the motions, and, on July 1, and July 5, 2022, they filed replies.   Dkt. Nos. 25-31.   After review of the parties' briefing, the Court ordered an early settlement conference.   Dkt. No. 32.   While settlement discussions were ongoing, the Court also ordered supplemental briefing on whether any of Santucci's claims were ripe for adjudication.   Dkt. No. 41.   The Court has received supplemental briefs from all parties.   Dkt. Nos. 43, 46-47.   However,

after multiple settlement conferences, the parties reached an "impasse."  Dkt. No. 45.

This Order on the pending motions, therefore, follows.

## LEGAL STANDARD

### I.    Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).

Before issuing an injunction, to the extent raised by a party or *sua sponte*, this Court must satisfy itself that subject matter jurisdiction exists.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (explaining that subject matter jurisdiction "involves a court's power to hear a case" and a court has an independent obligation to determine whether such jurisdiction exists) (quotation and citation omitted); *Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim…."").   In that regard, under Article III of the U.S. Constitution, this Court's subject matter jurisdiction is

limited to "cases" or "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Standing and ripeness are components of the case or controversy requirement, and a lack of either equals a lack of subject matter jurisdiction. *Id*. at 560-561; *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

When presented with an argument relating to a court's subject matter jurisdiction, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Where the court considers evidence outside the pleadings for this purpose, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*.

## II.   **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2).   *Id.* at 679.

## DISCUSSION

The Court begins with whether subject matter jurisdiction exists over Santucci's claims.

## I.   Subject Matter Jurisdiction

The question before the Court is whether Santucci's claims are ripe.   The Attorney General argues that they are not because HPD has made only a "preliminary determination" with respect to Santucci's mental health and, if HPD has erred in that regard, Santucci can "raise[]" the issue with HPD to allow it to "fix its mistakes before issuing a final decision."   Dkt. No. 43 at 4.   Santucci disagrees, arguing that HPD has taken possession of his firearms, and he cannot

reacquire them until he submits documentation from a doctor.   Dkt. No. 47 at 5.

Santucci continues that the "need to undergo this [doctor's] evaluation is the issue

he is bringing suit over." *Id*.

In light of the manner in which Santucci has framed his claims, the Court

finds that the same are ripe because the actions he challenges are final.

Specifically, the principal action Santucci challenges is the one contained in the

July 2021 Letter from HPD instructing him to provide documentation from a

doctor stating that he is no longer adversely affected by an addiction, dependence,

mental disease, or disorder.   This action is final because (1) the July 2021 Letter

expressly states that "[n]o further action will be taken on your application until the

required letter is received[]", and (2) the Complaint alleges that Santucci has been

required to turn in his firearms, which he cannot recover, until and unless he

complies with HPD's medically-related demands.   In other words, without

documentation from a doctor, Santucci's application to register has come to a stop,

and his firearms have been seized.   Therefore, given that Santucci asserts that he

brings suit over the need to submit documentation from a doctor, rather than the

granting or denial of his application, on the record before the Court, HPD's action

in that regard appears final.

The Attorney General's arguments to the contrary are unpersuasive.   The Attorney General asserts that a final decision has not been made on Santucci's application.   While that is true, it misses what Santucci says is the point of his claims: the need to submit documentation from a doctor.   The Attorney General further contends that, if HPD has erred, Santucci should raise such error with HPD to allow it to "fix" its mistakes.   While that sounds reasonable in a vacuum, the Attorney General provides no meaningful explanation of how Santucci is meant to raise any purported errors with HPD's actions.[3]

Therefore, the Court finds that Santucci's claims are ripe.

## II.   **Motion for Preliminary Injunction and Motion to Dismiss**

Because the arguments related to the motion to dismiss are largely encompassed in the briefing on the motion for preliminary injunction, the Court addresses those arguments as one below.

Santucci argues that he is likely to succeed on the merits of his claims. First, Santucci argues that he is not precluded from firearm ownership under Hawai'i law—specifically, Hawai'i Revised Statutes (HRS) Section 134-7.   Dkt. No. 5-1 at 3-4.   He then argues that, "[i]n the event this Court disagrees" with

---

[3]While the Attorney General arguably alludes to a "contested-case hearing" as a potential avenue of redress, she provides no explanation of why such a hearing is applicable in the circumstances described.   *See* Dkt. No. 43 at 4-5 n.3.

Santucci's construction of Hawai'i law, Section 134-7 is unconstitutional under the Second Amendment and/or unconstitutionally vague. *Id*. at 4, 6-12, 23. Santucci also argues that, in seeking to register his firearms, he has been required to disclose private personal information in violation of the Second Amendment and Due Process. *Id*. at 4-6, 15-23. Specifically, Santucci challenges the alleged disclosure of his medical information and desire to purchase a firearm. *Id*.[4]

For the reasons discussed below, the Court agrees that, pursuant to Section 134-7, Santucci is not precluded from registering his firearms. As a result, it is unnecessary to address Santucci's self-described "alternative[]" arguments related to the alleged unconstitutionality of that provision.

As an initial matter, it is important to note that no party here disputes Santucci's allegations that (1) he affirmatively answered Question 11 of the Firearm Application Questionnaire, which relates to whether he has ever been diagnosed as having a behavioral, emotional, or mental disorder, and (2) the only reason Santucci was asked to provide a letter from a doctor stating that he was no longer affected by such a disorder was due to his affirmative answer to Question

---

[4]Santucci also, briefly, argues that his right to Equal Protection has been violated. Dkt. No. 5-1 at 14-15. The argument, however, is far too conclusory and undeveloped for the Court to assess at this juncture whether Santucci has a likelihood of success on the same. Therefore, the Court does not further address his Equal Protection claim.

11.   With those two undisputed facts in mind, there is no basis in the record for Santucci to have been asked to provide the doctor's letter or even, at least under Section 134-7, for Santucci to have been told to turn over his firearms.   The reason is simple: pursuant to Section 134-7, an affirmative answer to Question 11 does not render Santucci ineligible for gun registration or ownership.   And no one really disputes that.   *See* Dkt. No. 26 at 8-9 (Honolulu noting that Question 11 misses "critical language" from Section 134-7); Dkt. No. 28 at 14 (Attorney General agreeing that an applicant "would not be disqualified" unless he has been diagnosed as having a *significant* behavioral, emotional, or mental disorder). Therefore, given that Santucci's affirmative answer is undisputedly the sole reason he was asked to provide the doctor's letter, that request cannot stand.

Honolulu nonetheless offers some push-back.   Principally, although Question 11 provides no basis under Hawai'i law to do so, Honolulu argues that it was "required by law" to ask Santucci to submit the doctor's letter.   Dkt. No. 26 at 9.   Honolulu does so, not by pointing to Section 134-7, but, instead, Section 134-3, which Honolulu contends provides for the registration of firearms on forms prescribed by the Attorney General.   *Id*. at 10.   Honolulu argues that, because it is statutorily required to use a form prescribed by the Attorney General—here, the Firearm Application Questionnaire—it was required to ask for a doctor's letter from

14

Santucci following his affirmative answer to Question 11. *Id*. at 9-10. Only part of what Honolulu asserts, however, is true. That Section 134-3 mandates the "registration of all firearms . . . on forms prescribed by the attorney general…." is certainly true. *See* Haw. Rev. Stat. § 134-3(b). The part that is not true, though, is that Honolulu was required to ask for a doctor's letter after an affirmative answer to Question 11. Honolulu cites no support for that proposition because, as explained above, there is none. Notably, the *only* statutory mandate Honolulu is following in this regard is in using the form prescribed by the Attorney General. The form itself nowhere mentions the supposed requisite submission of a doctor's letter in follow-up to a response to any specific question. In demanding a doctor's letter that Santucci is no longer affected by a behavioral or mental disorder, Honolulu is noticeably *ignoring* Section 134-7's mandate that only *significant* such disorders may require a doctor's letter to show an applicant's entitlement to register.[5]

---

[5]To be clear, the Court is not unsympathetic to the position in which Honolulu has been placed by the Attorney General's unexplained, and likely unexplainable, reason for not revising the Firearm Application Questionnaire to reflect the current language of Section 134-7. The Attorney General's inaction appears particularly unexplainable, given that, according to her, although Section 134-7 has been amended in the past, the language requiring a behavioral or mental disorder to be *significant* has existed since at least 1981. *See* Dkt. No. 28 at 2. Ultimately, however, it is not Santucci's fault that Question 11 of the Firearm Application Questionnaire ignores the language of Section 134-7 to his detriment. Moreover, it is not this Court's role to allow Honolulu's enforcement of the Attorney General's inaction to continue simply because Honolulu is concerned about its potential liability. It is simply this Court's role

The remaining preliminary injunction factors also favor Santucci on this specific issue.   As for irreparable harm, Santucci is harmed by being asked to provide documentation from his doctor that Section 134-7 does not require him to provide.   This harm is irreparable because, as the July 2021 Letter states, "[n]o further action will be taken on your application until the required letter is received."   In other words, Santucci will not be able to register (or recover) his firearms until he provides the "required" letter, which, as discussed, is not required by Hawaiʻi law.[6]   As for the public interest and balance of the equities,[7] the public interest is best reflected in the statutory language passed by the public's representatives in the Hawaiʻi Legislature.   Specifically, there is a public interest in precluding from firearm registration individuals who have been diagnosed with and remain adversely affected by a *significant* behavioral, emotional, or mental disorder.   As discussed, an affirmative answer to Question 11 does not address that interest.   There is, thus, no public interest in precluding an individual from registering firearms based solely on his answer to the question in its present form.

---

to address what the law is and, here, the law is that an affirmative answer to Question 11 does not alone preclude Santucci from registering his firearms.

[6]In addition, contrary to Honolulu's assertion, Dkt. No. 26 at 15, it is unclear how monetary damages can compensate Santucci for having to comply with an instruction that is not required by Hawaiʻi law.

[7]These factors merge here because the government is a party.   *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Similarly, it is in the public interest to have the language of Hawaiʻi law enforced, as written in the statute, as opposed to in the flawed language of Question 11.   *Cf. Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013) (explaining that the public interest is benefited by construing statutes "in a manner that avoids serious constitutional questions[,]" even if such construction may impose burden on the government).

In this light, the Court finds that Santucci is not precluded from registering his firearms solely because of his affirmative answer to Question 11.   He is also not required to provide a doctor's letter stating that he is no longer adversely affected by a behavioral, emotional, or mental disorder.   As a result, given that there are no reasons other than Santucci's answer to Question 11 for failing to register his firearms, Honolulu is ordered to (1) return to Santucci his firearms within 15 days of this Order, and (2) complete the registration of Santucci's firearms, pursuant to Section 134-3, within 60 days, unless good cause is shown for an extension of time.

In addition, going forward, Honolulu is preliminarily enjoined from (1) requiring an applicant for firearm registration to provide written certification from a licensed psychologist, psychiatrist, or medical doctor, or (2) otherwise taking no further action on an application to register firearms, solely due to an affirmative

17

answer to Question 11, as currently written, on the Firearm Application

Questionnaire.[89]   Therefore, with respect to the foregoing, the motion for

preliminary injunction is GRANTED, and the motion to dismiss is DENIED.

Santucci also argues that his private personal information has been disclosed

in violation of the Second Amendment and Due Process.   The personal

information and disclosures at issue are (1) a medical waiver provided to Honolulu

to access records related to his mental health, and (2) informing his doctor that he

is purchasing a firearm.   The Court addresses each in turn.

First, Santucci argues that the disclosure of his medical information is not

"tailored" to Honolulu's rationale for the same.   That is because, although

Honolulu's purported reasoning is to determine whether a person has been

diagnosed with a significant mental illness, an applicant's doctor is required to

---

[8]The Court notes that in neither the Complaint nor the motion for preliminary injunction does
Santucci provide specific guidance on the preliminary injunctive relief he presently seeks, other
than to generally ask for the Defendants' conduct or Section 134-7 to be enjoined.   *See* Compl.
at 26; Dkt. No. 5 at 2.   Despite this ambiguity, the Court finds that the preliminary injunctive
relief ordered herein is appropriate, but no more than necessary, to remedy the proven deficiency
here.

[9]In partially granting Santucci preliminary injunctive relief, the Court does not order any security
to be given under Fed.R.Civ.P. 65(c).   In the motion for preliminary injunction, Santucci argues
that waiver of bond is appropriate.   Dkt. No. 5-1 at 26-27.   Neither Honolulu nor the Attorney
General responded to this argument in their oppositions, *see generally* Dkt. Nos. 26, 28;
therefore, the Court considers it unopposed and declines to order the giving of security.   *See*
*Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (explaining that Rule 65(c) "invests
the district court with discretion as to the amount of security required, *if any*.") (quotations
omitted, emphasis in original).

disclose *all* mental health treatment, even treatment unrelated to significant mental illness.   Dkt. No. 5-1 at 19.   The Court disagrees.   Notably, there is no evidence in the record to support the assertion that an applicant's doctor is required to disclose information unrelated to significant mental illness.   The only evidence presented in this regard is a generic medical waiver form and a letter sent to a doctor that is not Santucci's doctor.   *See id*. at 18 (citing Exhibits C and F).   Exhibit C, the medical waiver form, merely provides access to any records that have a bearing on an applicant's mental health "for the strict purpose of determining [his] qualification to acquire, own, possess, or have under [his] control, a firearm."   According to Santucci, Exhibit F is an example of the waiver in action.   *See* Compl. at ¶ 87.   Exhibit F is a letter to a doctor that also contains a "Request for Information."   Santucci asserts that, in this documentation, Honolulu should only inquire whether or not an applicant has a significant behavioral, emotional, or mental disorder.   Dkt. No. 5-1 at 20.   That, however, is precisely what Exhibit F does.   Specifically, the relevant question in the "Request for Information" asks: "is the Applicant a person who…[i]s or has been diagnosed as having a *significant* behavioral, emotional, or mental disorder as defined by the most current diagnostic manual of the [APA]?"   Exh. F at 4 (emphasis added).[10]

---

[10]The Court notes that, on the present record, this is the one time where, in light of the statutory

In other words, Exhibit F does not ask a doctor to disclose any more medical information than Santucci himself concedes is appropriate.   As a result, the Court does not find a likelihood of success on this claim.

Second, again citing Exhibit F, Santucci "challenges the release of the fact that he is purchasing [] a firearm to his doctor."   Dkt. No. 5-1 at 18.   Exhibit F, however, shows no such thing.   Notably, as mentioned, Exhibit F is a letter that was sent to a doctor that is not Santucci's doctor.   This is because the applicant at issue in Exhibit F is *not* Santucci.   *See* Dkt. No. 1-6 at 1.   In other words, there is no evidence in the record that *Santucci's* desire to acquire or register a firearm has been disclosed to anyone.   Moreover, Santucci does not allege otherwise.   *See* Compl. at ¶ 87.   As a result, the Court does not find any support for this claim. Therefore, with respect to Santucci's privacy-related claims, the motion for preliminary injunction is DENIED.

For the same reasons, the Court also finds that Honolulu is entitled to dismissal of Santucci's privacy-related claims.[11]   Because this is the first time that dismissal has been sought, however, should he so choose, Santucci may amend his

---

language, the *correct* question has been asked.

[11]Whether this is due to a failure to state a claim or a failure to establish a cognizable injury-in-fact, which relates to standing and subject matter jurisdiction, the claim is still subject to dismissal based upon the record before the Court.

privacy-related claims.   Santucci may have until December 16, 2022 to do so.

Should he elect not to amend these claims, this action will proceed on the

remaining claims in the Complaint.

### **CONCLUSION**

To the extent set forth herein, the motion for preliminary injunction, Dkt.

No. 5, is GRANTED IN PART and DENIED IN PART.   The motion to dismiss,

Dkt. No. 19, is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: November 23, 2022 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge

*Michael Santucci v. City and County of Honolulu, et al*; Civil No. 22-00142 DKW-KJM; **ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS**